# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============

## NO. 03-99-00401-CR

===============

**David George Carney, Appellant**

**v.**

**The State of Texas, Appellee**

=========================================================================
### FROM THE COUNTY COURT AT LAW OF COMAL COUNTY
### NO. 98CR-102, HONORABLE BRENDA R. FREEMAN, JUDGE PRESIDING
=========================================================================

This appeal is taken from a conviction for interference with the duties of a peace officer. *See* Tex. Penal Code Ann. § 38.15 (West Supp. 2000). The jury, having found appellant David George Carney guilty, assessed his punishment at 180 days in the county jail and a fine of $2000, the maximum punishment for a Class B misdemeanor. *See* Tex. Penal Code Ann. § 12.22 (West 1994).

**Points of Error**

Appellant advances six points of error. First, appellant challenges the legal sufficiency of the evidence to support the conviction. We sustain this challenge and find it unnecessary to enumerate or discuss the other points of error.

**Facts and Background**

At trial, the State utilized the testimony of four peace officer-witnesses. Appellant did not testify or call any witnesses. The incident in question occurred at the residence of appellant and his wife, Carolyn Carney, at 5341 Little Deer, Bulverde, in Comal County. On the morning of June 13, 1997, Sergeant-Investigator Larry Anderson of the Special Crimes Unit of the Texas Department of Public Safety arrived, with other officers, at appellant's home to serve a writ of attachment upon Carolyn Carney for failure to appear to give a deposition in a civil case. The process had originated in a district court in Travis County.

Anderson knocked on the door but got no response. The officer believed someone was in the house because of information received from a confidential informant. Anderson stated he had hoped to get "just compliance with the misdemeanor warrant"[1] but he got "no cooperation at all." Sergeant Anderson left the premises to secure a search warrant. A local justice of the peace issued a search warrant based on Anderson's affidavit that Carolyn Carney was "concealed" in her own home in violation of the laws of the State of Texas,[2] that a warrant

---

[1]     In his testimony, Sergeant Anderson may have misspoken when he referred to a "misdemeanor contempt of court warrant." The order of attachment instructed the district clerk to issue a writ of attachment directing peace officers to arrest Carolyn Carney and bring her before the court at certain hours or confine her until that could be done, or until a further order to show cause why she should not be held in contempt of court issued.

[2]     Section 38.16 of the Penal Code (Preventing Execution of Civil Process) provides:

   (a) A person commits an offense if he intentionally or knowingly by
       words or physical action prevents the execution of any process in
       a civil case.

   (b) *It is an exception to the application of this section that the actor
       evaded service of process by avoiding detection.*

   (c) An offense under this section is a Class C misdemeanor.

of arrest had been issued for her, and based on information from a confidential informant that Carolyn Carney had been in the residence within the past eight hours.

On the same day about 5:45 p.m., Sgt. Anderson returned to appellant's home with a combination arrest-search warrant and the writ of attachment. Anderson was dressed in mufti, but his jacket had "State Police" emblazoned on it. He was accompanied by uniformed D.P.S. Troopers Robert Armstrong, James Jones, Lin Manford, and Comal County deputy sheriffs Kenneth Joyce, Rick Sanchez, and Ed Whitson.[3] The officers arrived in marked patrol cars.

Appellant was in the front yard and walked down the driveway to meet the officers. Sergeant Anderson informed appellant that they had "a warrant" for his wife. Appellant responded that his wife was not there. Anderson told appellant that they had a search warrant and would search anyway. Appellant requested and was given a copy of the warrant, but Anderson could not recall what other copies of documents may have been given to appellant. The record does not reflect whether the search-warrant affidavit was available. Trooper Manford and Deputy Joyce went to the rear of the house in different directions.

Appellant began arguing with Sergeant Anderson about the validity of the search warrant, contending his wife's name was not on the warrant, the property was not described, and

Tex. Penal Code Ann. § 38.16 (West Supp. 2000). (Emphasis added).

[3] Trooper Jones revealed in his testimony that an FBI agent was present on the scene but did not enter the property.

3

the officers had no authority to be on the property.[4] The argument continued for several minutes until Trooper Armstrong asked Sergeant Anderson if they should break down the front door. Appellant replied, "No, No, I'll let y'all in." While talking to Anderson, appellant moved to the closed garage door and opened it. The garage was full of miscellaneous items with a walk-way from the garage door to a side entry to the residence from the garage. Appellant continued to argue about the validity of the warrant with Anderson as he walked backwards toward the side-entry door. According to Trooper Armstrong, the officers were behind Anderson at this point and the door to the house was behind appellant. Sergeant Anderson testified that appellant was still debating and the officers were "getting kind of antsy to get in the house" and "eventually we just pulled him aside and detained him for not letting us in as soon as I would like." Anderson estimated that six minutes had elapsed since the officers had arrived. Trooper Armstrong reported that "[a]t that time Trooper Jones shoved Mr. Carney to the side and entered the residence." Jones was followed by Deputy Sanchez. Appellant was then handcuffed by other officers.

Trooper Jones testified appellant backed up the walk-way in the garage still arguing about the validity of the warrant. Jones related that all of the officers were there but he could not recall their positions. Jones explained that appellant "was facing me for one" and that the door to the residence from the garage was to his [Jones's] right. Trooper Jones explained the safety issue involved in any delay in getting into a house to be searched. He added: "By this

---

**4** At trial, Sergeant Anderson acknowledged that the combination arrest-search warrant itself lacked a property description and the name of the person to be arrested or seized. *See infra*, n.12.

4

time, it was way overdue, so what I did was to ask Mr. Carney to move one more time. He didn't. So I pushed him away; and, at that time I entered the house to the right."

Deputy Kenneth Joyce testified that after going to the rear of the house he and Trooper Manford entered an unlocked door at the back of the garage. Appellant and the other officers were there. Joyce stated that appellant "was just left of the doorway" to the house. Joyce recalled that as one of the officers started towards the door, appellant "reached out as if to grab him." Joyce "believed" the officer was Trooper Jones. As the officers entered the house, Joyce and Trooper Manford restrained appellant and handcuffed him.

The officers were permitted to testify simply that after entering the house they found Carolyn Carney hiding in a closet in an upstairs bedroom. They were not allowed to testify before the jury that Carolyn Carney pointed a gun at an officer nor was Sergeant Anderson permitted to relate that in his undercover work, he had determined appellant and his wife were associated with the group known as "The Republic of Texas."[5]

## Section 38.15

The instant prosecution was pursued under Section 38.15 of the Texas Penal Code which provides in pertinent part:

(a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:

---

[5] Carolyn Carney's conviction for aggravated assault on a public servant wherein she was assessed ten years' imprisonment and a fine of $10,000 was affirmed on appeal in an unpublished opinion. *See Carolyn Carney v. State*, No. 03-99-00240-CR (Tex. App.—Austin 1999, pet. ref'd untimely filed).

> (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law; . . .
>
> . . . .
>
> (b) an offense under this section is a Class B misdemeanor.[6]
>
> . . . .
>
> (d) It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only.

Tex. Penal Code Ann. § 38.15 (West Supp. 2000).

The parties have not cited and we have not found any reported case on appeal involving prosecution under section 38.15 or its forerunners. The statute is one of a number of Texas penal statutes related to the obstruction of justice. Its forerunner (section 38.16) was first added to the Penal Code in 1989.[7] The statute was later renumbered from section 38.16 to section 38.18.[8] The current statute was renumbered from section 38.18 to section 38.15 and amended as part of the 1994 Texas Penal Code.[9] The current section 38.15's forerunners encompassed all four levels of culpable mental states. *See* Tex. Penal Code Ann. § 6.02(d)

---

[6] "Recognizing that certain unintentional or less consequential interruptions or interferences with the duties of public servants in law enforcement or emergency roles should be treated with some leniency, this section provides only a Class B misdemeanor punishment." Ed Kinkeade & S. Michael McCullough, *Texas Penal Code Annotated* (West 2000).

[7] *See* Act of May 25, 1989, 71st Leg., R.S., ch. 1162, § 1, 1989 Tex. Gen. Laws 4780.

[8] *See* Act of June 6, 1990, 71st Leg., 6th C.S. ch. 12, § 2(26), 1990 Tex. Gen. Laws 88, 90.

[9] *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3672.

(West 1994). The current statute's only culpability requirement is the lowest culpable mental state—criminal negligence which is defined in section 6.03(d). *See* Tex. Penal Code Ann. § 6.03(d) (West 1994).[10] The act requirement of the statute is broad and includes interrupting, impeding, disrupting, or otherwise interfering with the performance of official duties. One commentator has noted that the breadth of the conduct will probably require the State to allege specifically the manner and means used by an accused to interfere. *See* Gerald S. Reamey, *Criminal Offenses and Defenses in Texas* 255 (West 1993) (hereinafter *Reamey*).[11]

It is observed that section 38.15 expressly provides in subsection (d) a defense when the interference consists of speech only. Even without this statutory defense, a verbal interference with a public servant or officer could be defended on grounds of the First Amendment to the United States Constitution. *See City of Houston v. Hill*, 482 U.S. 451 (1987); *Reamey* at 258.

---

[10] Section 6.03(d) provides:

(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

[11] This same commentator is of the view that the statute will undoubtedly be challenged on the grounds that other, more specific statutes control. He suggests the more specific statutes may relate to "evading arrest, facilitating escape, false report to an officer, harboring a runaway child, hindering apprehension or prosecution, preventing execution of civil process, resisting arrest or search, and tampering with physical evidence or governmental record." *See Reamey* at 254-55. This may explain in part the lack of prosecution under section 38.15 and its forerunners.

## The Information

With this background, we turn to the information in the instant case which provides in pertinent part that:

> On or about the 13th day of June, 1997, and before the making and filing of this information, David George Carney, did then and there with criminal negligence interrupt, disrupt, impede or otherwise interfere with James Jones, a peace officer, while the said peace officer was performing a duty or exercising authority imposed or granted by law, to wit: *by blocking the entry of Trooper James Jones into a residence*, and the said Trooper was assisting in the execution of a search warrant and/or wit [sic] of attachment. (Emphasis added.)

The elements of the offense charged are (1) David George Carney (2) with criminal negligence (3) did interrupt, disrupt, impede or otherwise interfere with (4) James Jones, a peace officer, while the said peace officer was performing a duty or exercising authority imposed or granted by law (5) by blocking the entry of Trooper James Jones into a residence and (6) while the Trooper was assisting in the execution of a search warrant and writ of attachment.

The information, recognizing the expansiveness of the act requirement of section 38.15, specifically limited the manner and means allegedly used by appellant in interfering with Trooper Jones to "blocking entry into a residence." *See also* Tex. Code Crim. Proc. Ann. art. 21.15 (West 1989) (must allege act of criminal negligence).[12] In limiting the manner and means

---

[12]  Article 21.15 provides:

Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment or order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal

8

alleged, the information impliedly recognized that interference by speech only is a defense. *See* Tex. Penal Code Ann. § 38.15(d) (West 2000).

## Legal Sufficiency Standard

In determining whether the evidence is legally sufficient to support the judgment, we view the evidence in the light most favorable to the jury's verdict, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.—Austin 1994, pet. ref'd). In our review of the legal sufficiency of the evidence, we must consider all the evidence which the jury was permitted, properly or improperly, to consider. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991).

The jury is the exclusive judge of the facts proven and the weight to be given to the testimony. It is the judge of the credibility of the witnesses. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The jury is free to accept or reject any or all of the evidence presented. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1994); *Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd).

## Discussion

---

negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence.

9

Putting aside the issue of proof of the culpable mental state alleged, we will examine the record to determine if the evidence is sufficient to establish an essential element of the offense alleged—interference "by blocking the entry of Trooper James Jones into a residence," keeping in mind the statutory defense set forth in section 38.15(d).

"Blocking" is not defined by the Penal Code or Code of Criminal Procedure nor used in section 38.15. It is to be given its plain meaning in accordance with common usage. "Blocking" means "1. the act of one that blocks: as a: the act of obstructing . . . ." Webster's Third New International Dictionary 236 (Mirriam-Webster, Inc. 1986). As synonyms of "block," the terms "blocked, blocking, blocks" mean "(4) to stop or impede the passage of or movement through, hinder or obstruct: block traffic." American Heritage Dictionary of the English Language 142 (1973).

As observed earlier, appellant met the officers on the driveway of his private residence when the officers arrived in force in the late afternoon. Appellant was informed that the officers were there to arrest his wife and to search the house if necessary. Appellant told the officers his wife was not there.

At his request, appellant was shown the combination search and arrest warrant and perhaps other documents. Appellant began to verbally challenge the warrant, claiming his wife was not named therein.[13] Appellant argued that the officers had no authority or right to be on the property. This conversation or discussion apparently continued for several minutes until one

---

[13] The search warrant itself (State's Exhibit No. 2) did not describe the premises to be searched nor name the person to be seized. It merely incorporated the search warrant-affidavit by reference.

of the officers mentioned the possibility of breaking down the front door to appellant's home. At this point, appellant agreed to let the officers into the house. While still engaged in conversation with Sergeant Anderson, appellant voluntarily and physically opened the garage door. Appellant backed up a trail or walk-way through miscellaneous items in the garage while still continuing to argue and debate the validity of the search warrant. About this, there is no dispute. The position of the various individuals is not that clear. Trooper Armstrong testified that the door to the house was behind appellant, "we" were behind Sergeant Anderson, and Anderson and appellant were still talking about the warrant. Anderson related that at this point appellant "kind of positioned himself in front of the door" and the officers were "kind of in a semicircle around him," and appellant was still arguing about the authority of the officers to be on the property. Deputy Joyce placed appellant as standing to the left of the doorway to the house inside the garage while a conversation with the officers continued. Trooper Jones stated that appellant was "facing me for one," and the door to the residence from the garage was to his (Jones's) immediate right. Appellant was still arguing.

At this point, the record reflects that the officers were getting "kind of antsy," determined that "it was time to go in," "thought appellant had been given ample time," and Trooper Jones stated that "it was way overdue." Trooper Jones then "shoved" or "pushed" appellant, who was in front of him, and "entered the house to the right" through the doorway. Sergeant Anderson testified that "we just pulled him aside and detained him for not letting us in as soon as I would like."

There can be no question that, by his argument and his conversation with the officers, appellant delayed the officers in obtaining entry in appellant's home. He lied to the

11

officers about his wife's presence. Speech alone, however, is a statutory defense to the offense with which appellant was charged.

None of the armed officers expressly testified that appellant blocked their entry into the house by physical action. There was evidence that he was facing the officers and in front of the door while he continued arguing, but there was no evidence that he was up against the door physically preventing entry. In fact, the contrary appears. Joyce placed appellant to the left of the doorway and Jones placed the door to his right as he faced appellant. After shoving appellant aside, Jones entered the doorway to Jones's right. There is nothing to show that the pushing or shoving of appellant was necessary to make entry. The only physical action on appellant's part at the time was described by Deputy Joyce. When one of the officers "believed" by Joyce to be Jones "started towards the door," appellant "reached out as if to grab him (officer)." There is nothing to show appellant reached or touched Jones or any other officer, or by his reaching, blocked entry into appellant's home.

The State in its brief contends that:

> [B]y arguing with the Troopers first in the front yard, then at the garage door, and then at the doorway leading from the garage into the residence proper, appellant was stalling the Troopers . . . . Appellant's actions of more than mere words were the direct cause of Trooper Jones having to push appellant to the side but—for appellant's physical presence at, in or near the doorway, he would have been neither pushed nor arrested.

Under section 38.15, arguing with the officers does not constitute an actionable offense. Speech is a statutory defense to the offense charge even if the end result is "stalling." The culpable mental state under the statute is criminal negligence. Therefore, in order to satisfy

12

the requirement of Article 21.15, the information alleged the act relied upon to constitute criminal negligence—the blocking of the entry of a particular named officer into appellant's residence. There is no evidence that appellant was "in" the door as the State contends. Moreover, being "at or near" the door does not establish "blocking" of Trooper Jones's entry under the circumstances showing the positions of appellant and Jones in relation to the door. The officers were getting "antsy" and Trooper Jones thought the time to enter was "way overdue." For that reason, in this understandably tense situation, Trooper Jones shoved appellant and entered the door to Jones's right, not because appellant was blocking Jones's access to the door.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could not have found, beyond a reasonable doubt, the essential element of interference by blocking Trooper Jones's entry into appellant's home independent of speech. Thus, the evidence is legally insufficient to sustain the conviction. The first point of error is sustained.

Our disposition renders unnecessary a discussion of appellant's other points of error. The judgment of conviction is reversed and judgment is rendered that appellant is acquitted. *See Burks v. United States*, 437 U.S. 1 (1978); *Greene v. Massey*, 437 U.S. 19 (1978).

13

_____

_____                  John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion[*]

Reversed and Rendered

Filed:   October 12, 2000

~~Do Not Publish~~  Released for publication November 16, 2000.  Tex. R. App. P. 47.3(c).

[*]  Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).