IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20806

Summary Calendar
_____


CATHERINE KIANG HUANG, Individually,
and as next friend of Jeffrey Huang
and Jonathan Huang, Minors

             Plaintiff - Counter Defendant - Appellee

     v.

HARRIS COUNTY; ET AL

             Defendants

BRIAN ERIC SCUDDER, Harris County
Precinct 5 Deputy; BENJAMIN EDWARD DARBE, JR,
Harris County Precinct 5 Deputy,

             Defendants - Counter Claimants - Appellants

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-99-CV-1029
_____
June 22, 2001

Before KING, Chief Judge, and SMITH and PARKER, Circuit Judges.

PER CURIAM:[*]

---

   [*]   Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Appellants Brian Scudder and Benjamin Darbe appeal from the district court's denial of their motion for summary judgment based on qualified immunity. For the following reasons, we REVERSE the judgment of the district court and REMAND for entry of judgment in favor of Scudder and Darbe.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 1997, Catherine Huang called the Harris County Constable's Office after a dispute with a neighbor who complained that Huang's son, Jeffrey, had broken a flood light outside the neighbor's house and asked that an officer be sent to her home. Deputy Constable Brian Scudder was dispatched to Huang's home and spoke with both parties.[1] After this initial investigation, Scudder returned to the Huang residence and asked Jeffrey if he had broken the light bulb. Jeffrey responded that the light bulb had been lying in the alleyway and that he had kicked it.[2] Scudder informed Huang that she could either compensate the

---

[1] According to Scudder, he also spoke to a neighbor who stated that, while gardening, she heard the sound of glass breaking in the alleyway between her home and the home of the complaining neighbor and that when she looked down the alleyway a second or two later she saw Jeffrey kicking a piece of glass and could see no one else in the alleyway.

[2] Specifically, Huang testified that, when asked if he broke the light bulb, Jeffrey said "Yes, I kick it. Its right there in the alleyway. I just kick it." Scudder testified that Jeffrey responded "I didn't break the light bulb, I kicked it and it broke." Scudder understood the response to mean that Jeffrey had not removed the light bulb from the fixture, but, seeing the light bulb in the alleyway, had kicked it, and it broke.

2

neighbor for the broken light bulb or he could issue a Class C citation to Jeffrey for criminal mischief (a misdemeanor non-jailable offense) that she and Jeffrey could go to court and contest. Insisting that her son had not broken the light bulb, Huang opted to go to court. At this point, the parties' versions of the facts diverge slightly.

According to Huang,[3] Scudder went to his car and called for back-up assistance, telling Jeffrey to follow him. Huang heard Scudder call for back-up for a "white juvenile detained at [Huang's address]." Fearing Jeffrey was about to be arrested, Huang instructed Jeffrey to go back inside the house and closed the security gate behind him as Scudder, who had seen Jeffrey re-enter the home, ran up the walkway in an attempt to "grab" Jeffrey. Scudder told Huang, who was still outside, to bring Jeffrey back outside or she would be arrested for interfering with a police investigation. Huang refused. Scudder then told Huang she was under arrest for interfering with police work and asked her to identify herself.

Huang refused to identify herself as requested and asked Scudder to leave her property or she would call the Sheriff's office and have him arrested. After Scudder stated he was placing her under arrest, Huang asked to use the telephone to

---

[3]   Huang's version of the events is taken from her complaint, her deposition testimony, and the deposition testimony of her two sons who were present during the incident.

call someone to watch her children. Scudder told her "no," but she had already proceeded towards her front door, through which Jeffrey was holding the telephone. Scudder knocked the telephone, which broke from the fall, out of Huang's hand, grabbed Huang's right wrist, and twisted it until her knees buckled and she was on the ground. Simultaneously, with her left hand, Huang held on to her front doorknob while Scudder pulled her towards the squad car. After she lost her grip on the door, Huang grabbed the iron security gate located outside her front door. At this time, Scudder's back-up, Deputy Constable Benjamin Darbe, Jr., arrived and assisted Scudder in turning Huang over on her stomach, handcuffing her, and "dragging" her into the squad car. Huang sustained bruises and a broken right thumb.

Deputy Scudder's version of the events is substantially similar. After Huang stated she wanted to go to court, Scudder told Jeffrey to step outside so Scudder could get his ticket book and issue a citation. Halfway down the walkway, Scudder told Jeffrey to remain on the walk while he obtained his ticket book from his car. As Scudder approached his car, he turned to see Huang "pushing" Jeffrey into the house and pulling the door closed behind him. After she refused Scudder's orders to stop, Scudder called for back-up. Scudder informed Huang that he needed to speak with Jeffrey, and she refused. Huang refused to retrieve Jeffrey, refused to give Scudder any information about Jeffrey or herself, and told him to leave her property or she

4

would have him arrested.  Scudder asked her again for her information and she refused to give it to him.  After repeatedly asking Huang for her information, Scudder told her she would be arrested for failure to identify herself if she did not provide the information.  According to Scudder, Huang then ran towards the front door of her home.  Scudder told her to stop and gave chase.  She kept running and grabbed hold of the front door handle.  Scudder grabbed her arm, told her to release her hand from the door handle, and told her she was under arrest.  Huang, still hanging onto the door handle, began screaming, trying to shake off Scudder's grip, and kicking Scudder.  At that point, Darbe arrived.  The two officers were able to remove Huang's hand from the door handle, whereupon she allowed her body to go limp, dropping herself to the ground.  The two officers attempted to handcuff her, but she freed her hand from Darbe's grasp and grabbed on to the security gate outside of her door.  Huang refused to remove her hand from the gate, and when the officers freed her hand left hand from the gate, she grabbed it with her right hand.  By the time the officers managed to get both her hands free from the gate and handcuff her, she had entwined her legs in the gate.  Scudder and Darbe waited until a third unit responded, and the officers were then able to free her legs from the gate and subdue her.  She refused to walk to the squad car and the officers were forced to pick her up, carry her to the squad car, and place her into the back seat.  Once in the car,

Huang complained of various broken bones in her arms and legs, and an EMS unit was dispatched. Huang refused treatment.

Jeffrey was never arrested, and Scudder mailed him a Class C citation charging him with criminal mischief. Jeffrey was ultimately acquitted of the charges brought against him. Huang was charged with resisting arrest, a Class A misdemeanor, and failure to identify, a Class C misdemeanor; however, the judge suppressed all evidence of her "resisting arrest," finding that the evidence was the result of police misconduct.

On April 6, 1999, Huang filed suit individually and on behalf of her minor children against Appellants Scudder and Darbe under 42 U.S.C. § 1983, for use of excessive force when effecting an allegedly wrongful arrest, and under state law, for false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, and assault and battery.[4] Appellants sought summary judgment for both the federal and state claims on the basis of qualified immunity.

The district court determined that Huang had raised genuine issues of material fact for trial regarding Appellants' qualified immunity defense under both federal and Texas law. The district court stated: "Specifically, Huang raises issues as to probable

---

[4] Huang also filed suit against Harris County and Glen Cheek, a Harris County Constable. Cheek was dismissed from the suit on April 26, 2000. Summary judgment was granted in favor of Harris County on August 31, 2000, a judgment from which Huang has not appealed. Only the qualified immunity claims of Scudder and Darbe are before us in this appeal.

6

cause for her warrantless arrest for some undefined or legally unauthorized offense alleged by Defendants not committed in Defendants' presence, their purported use of excessive force and extreme and outrageous conduct, and alleged malicious prosecution." Therefore, the district court denied summary judgment for Scudder and Darbe based on qualified immunity.

Scudder and Darbe timely appeal.


## II. STANDARD OF REVIEW

This court reviews <u>de novo</u> the district court's denial of a motion for summary judgment based on qualified immunity. <u>See</u> <u>Mendenhall v. Riser</u>, 213 F.3d 226, 230 (5th Cir. 2000). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" <u>Evans v. City of Houston</u>, 246 F.3d 344, 347-48 (5th Cir. 2001) (quoting FED. R. CIV. P. 56(c)).

"The movant has the burden of showing that there is no genuine issue of [material] fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'——that is, pointing out to the district court——that there is an absence of evidence to support the

nonmoving party's case." ).  If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  See Liberty Lobby, 477 U.S. at 248; Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264 (5th Cir. 1991) ("[F]actual disputes over issues not germane to the claim are simply irrelevant because they are not outcome determinative.  The court may grant a [summary judgment] motion, immaterial factual disputes notwithstanding.").  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  See Liberty Lobby, 477 U.S. at 248.

This court considers the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant.  See Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 365 (5th Cir. 2000).

### III. JURISDICTION

As an initial matter, we must determine if we have jurisdiction to hear this appeal.  Scudder and Darbe argue that we have jurisdiction over this interlocutory appeal of the denial of qualified immunity because no issue of material fact exists

8

and they are entitled to judgment as a matter of law.  Although Huang does not contest our jurisdiction, we have a duty to satisfy ourselves of our own jurisdiction.  See United Transp. Union v. Foster, 205 F.3d 851, 857 (5th Cir. 2000) ("'[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.'" (alteration in original) (some internal quotations omitted) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998))).

The denial of a motion for summary judgment based on qualified immunity is immediately appealable, under the collateral order doctrine, only when based on an issue of law. See Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001). "Accordingly, we have jurisdiction for this interlocutory appeal if it challenges the materiality of factual issues, but lack jurisdiction if it challenges the district court's genuineness ruling—that genuine issues exist concerning material facts." Id.  Orders determining "only a question of 'evidence sufficiency,' i.e., which facts a party may, or may not, be able to prove at trial," are not based on an issue of law and are not immediately appealable.  Johnson v. Jones, 515 U.S. 304, 313 (1995).  This court does have jurisdiction, however, to review a determination that certain facts (or factual disputes) are

9

"material" to the issue of qualified immunity.  See White v. Balderama, 153 F.3d 237, 240 (5th Cir. 1998).

The district court found that Huang had raised genuine issues of material fact regarding the existence of probable cause for her warrantless arrest, the use of excessive force, and malicious prosecution.  The district court stated:

> Specifically, Huang raises issues as to probable cause for her warrantless arrest for some undefined or legally unauthorized offense alleged by Defendants not committed in Defendants' presence, their purported use of excessive force and extreme and outrageous conduct, and alleged malicious prosecution.  Huang argues that before the warrantless arrest at her home by the deputies pursuant to her request for assistance in a dispute with a neighbor, Huang was suspected of no crime, did not commit any crime after they arrived, did not threaten the officers or give them any reason to fear for their safety or conclude that Huang had committed a crime, in her own home, not a suspicious place.  Nor, she contends, was the use of such excessive force objectively reasonable in the light of the circumstances confronting the officers.

Unfortunately, the district court was not very specific in stating which facts it found to be material to the denial of summary judgment.  We note also that several of the issues raised by Huang are undisputed.  For example, the parties agree that, prior to her arrest, (1) Huang was responsible for initiating the request for police assistance; (2) at that time, she was suspected of no crime; (3) she did not give the officers any reason to fear for their safety; and (4) she was in her own home. Further, although noting as a reason for its denial of summary judgment Huang's allegation that the force used was objectively

10

unreasonable, the district court identified no disputed material facts on this issue.

Faced with an order from the district court that denies summary judgment simply because "fact issues" remain, we have two choices after determining we have jurisdiction: (1) review the record to determine what facts the district court likely assumed, or (2) "remand to the district court for the purpose of allowing it to articulate specifically what factual scenario it believes emerges from viewing the summary judgment evidence in the light most favorable to [Huang]." Id. at 242; see also Behrens v. Pelletier, 516 U.S. 299, 313 (1996); Johnson v. Jones, 515 U.S. 304, 319 (1995); Wagner v. Bay City, Tex., 227 F.3d 316, 320 (5th Cir. 2000); Colston v. Barnhart, 146 F.3d 282, 285 (5th Cir. 1998) (denial of application for reh'g en banc) ("[W]here the district court does not identify those factual issues as to which it believes genuine disputes remain, an appellate court is permitted to go behind the district court's determination and conduct an analysis of the summary judgment record to determine what issues of fact the district court probably considered genuine.").

"In deciding an interlocutory appeal of a denial of qualified immunity, we can review the materiality of any factual disputes, but not their genuineness." Wagner, 227 F.3d at 320. After having reviewed the record to determine which facts the district court assumed, in the light most favorable to the

11

plaintiff, we find that we have jurisdiction to determine whether Appellants are entitled to qualified immunity as a matter of law.

## IV. QUALIFIED IMMUNITY

Qualified immunity shields government officials performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  See Bazan v. Hidalgo County, 246 F.3d 481, 488 (5th Cir. 2001).  The evaluation of a qualified immunity claim is a two-step process.  "The first step is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right."  Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997); see also Hare v. City of Corinth, MS, 135 F.3d 320, 325 (5th Cir. 1998).  "The second step requires the court to determine whether [the defendant's] conduct was objectively reasonable under existing clearly established law."  Colston, 130 F.3d at 99; see also Hare, 135 F.3d at 326.  Unlike the first step, the step-two inquiry applies the law that was clearly established at the time of the alleged violation.  See Hare, 135 F.3d at 326.  To ensure that qualified immunity serves its intended purpose, it is of paramount import, during step two, to define "clearly established law" at the proper level of

12

generality.  See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987); Petta v. Rivera, 143 F.3d 895, 899 (5th Cir. 1998).

"Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson, 483 U.S. at 640.  A defendant is entitled to qualified immunity "unless, at the time and under the circumstances of the challenged conduct,  all reasonable officials would have realized that [the defendant's conduct] was proscribed by the federal law on which the suit was founded."  Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997).  Thus, "'law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity.'"  Bazan, 246 F.3d at 488 (quoting Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001)).

The burden of proving the Appellants are not entitled to qualified immunity rests with Huang.

> Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden "to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law."  We do "not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."

Pierce, 117 F.3d at 871-72 (citations omitted).

### A.  Probable Cause/Wrongful Arrest

13

"The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause.  The officers are entitled to qualified immunity for the arrest if 'a reasonable person in their position could have believed he had probable cause to arrest.'"  Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001) (quoting Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000)).  Probable cause "exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'"  Spiller v. City of Tex. City, Police Dep't, 130 F.3d 162, 165 (5th Cir. 1997) (citation omitted).  "Thus, the central question in our qualified immunity inquiry is 'the objective (albeit fact-specific) question whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'"  Sorenson v. Ferrie, 134 F.3d 325, 328 (5th Cir. 1998) (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  In a 42 U.S.C. § 1983 suit alleging false arrest, in response to defendants' motion for summary judgment based on qualified immunity, the burden is on the plaintiff to show that the officer lacked probable cause, which means that she must show that the legality of her conduct was clearly established.  See Sorenson, 134 F.3d at 330.

14

The probable cause inquiry is an objective one. "A police officer need not actually have had the crime for which probable cause existed in mind at the time of the arrest; rather, the question is 'whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause.'" Gassner v. City of Garland, Tex., 864 F.2d 394, 398 (5th Cir. 1989) (quoting Trejo v. Perez, 693 F.2d 482, 486 (5th Cir. 1982)).

In this case, certain facts are undisputed. After Scudder told Jeffrey to stay where he was, Huang told Jeffrey to go back into the house. Further, Huang closed the security gate behind Jeffrey as Scudder, then aware Jeffrey was re-entering the home, ran up the walk and attempted to grab Jeffrey. She was informed by Scudder that if she did not allow Jeffrey to come out of the house, she would be arrested for interference with a police investigation. Further, Huang refused to give Scudder information he requested, such as her identity, and Huang was ultimately placed under arrest.

There is, however, some dispute as to the order of the events surrounding Huang's arrest. While Huang testified that Scudder placed her under arrest for failure to identify herself and then asked for her identification, Scudder testified that he asked Huang for her information and, when she refused to give it

15

to him, placed her under arrest for failure to identify.  We do not find, however, that given the undisputed facts and circumstances of this case, that this difference is material to the issue of probable cause.

Texas law recognizes the offense of "failure to identify." "A person commits [the offense of failure to identify] if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information."  TEX. PENAL CODE ANN. § 38.02(a) (Vernon 1994); see also Presley v. City of Benbrook, 4 F.3d 405, 408-09 (5th Cir. 1993).  Viewing the facts in the light most favorable to Huang, she was not under arrest at the time she refused to give her information to Scudder.  Therefore, we cannot find as a matter of law that "a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'"  Sorenson, 134 F.3d at 328 (alterations in original) (quoting Anderson, 483 U.S. at 641).

However, Texas law also recognizes the crime of "interference with public duties."  A violation occurs when "[a] person with criminal negligence[5] interrupts, disrupts, impedes,

_____

⁵  "Criminal negligence" is a state of mind occurring "when [a person] ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the

16

or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE. ANN. § 38.15(a)(1) (Vernon 1994 & Supp. 2001). A defense to prosecution under this statute is that the alleged interference consisted of speech only. Id. § 38.15(d); see also Carney v. State, 31 S.W.3d 392, 396 (Tex. App.-Austin 2000, no writ). Huang's testimony that she closed the gate behind Jeffrey as he entered the home, thereby preventing Scudder's access to him, supports a probable-cause determination. Cf. Carney, 31 S.W.3d at 398 (defendant's verbal challenges to the sufficiency of the search warrant did not impede officers' entry under § 38.15 where there was no physical action on his part). We are not required to determine that Huang's actions would be legally sufficient to support a conviction. We are only required to determine that it was not unreasonable for Scudder to believe he had probable cause for arrest.

Although Huang was not charged with the offense of interfering with public duties, "the legality of an arrest may be established by proving that there was probable cause to believe that the plaintiff had committed a crime other than the one with which [s]he was eventually charged, provided that the crime under

---

circumstances as viewed from the actor's standpoint." TEX. PENAL CODE ANN. § 6.03(d) (Vernon 1994). Criminal negligence is the lowest culpable mental state under Texas law. See Carney v. State, 31 S.W.3d 392, 395 (Tex. App.-Austin 2000, no writ).

17

which the arrest is made and [the] crime for which probable cause exists are in some fashion related." Gassner, 864 F.2d at 398 (internal quotations and citation omitted). We conclude that, given the factual circumstances here, failure to identify and interfering with public duties were sufficiently related that an objective officer might have charged the offense of interference with public duties. After Scudder asked Jeffrey to remain where he was, Huang told her son to return to the house and, as Scudder tried to "grab" Jeffrey, shut the security gate. Huang, after having been warned that she was interfering with a police investigation, refused to bring Jeffrey back outside and refused to give Scudder any information about Jeffrey or herself. The conduct that gave rise to the arrest for failure to identify was part of the same conduct that would have supported an arrest for interference with public duties. See Vance v. Nunnery, 137 F.3d 270, 274 (5th Cir. 1998); see, e.g., Babb v. Dorman, 33 F.3d 472, 479 n.12 (5th Cir. 1994); Gassner, 864 F.2d at 400; Trejo v. Perez, 693 F.2d 482, 485-86 (5th Cir. 1982).

Finally, under Texas law, "[a] person commits [the offense of resisting arrest] if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . of the actor or another by using force against the peace officer or another." TEX. PENAL CODE ANN. § 38.03(a) (Vernon 1994). The undisputed testimony is that, after having been placed under arrest, Huang clung to both her front door and then

18

to her security gate in an effort to resist Scudder's attempt to handcuff her. Scudder also asserted, and Huang did not produce evidence to refute Scudder's testimony, that she resisted Scudder's attempts to place her under arrest by entwining her legs inside the iron security gate. We note that there is a split of authority under Texas law whether simply hanging onto the gate and trying to shake off the peace officer's grip constitutes a violation of § 38.03. Compare Leos v. State, 880 S.W.2d 180, 184 (Tex. Ct. App.–Corpus Christi 1994, no writ) (finding insufficient evidence to support conviction for resisting arrest when evidence only showed appellant attempted flight and shook off officer's grip because such force not directed against officer), and Luxton v. State, 941 S.W.2d 339, 341 (Tex. Ct. App.–Fort Worth 1997, no writ), with Bryant v. State, 923 S.W.2d 199, 207 (Tex. Ct. App.–Waco 1996, pet. ref'd) ("We disagree with the courts' decisions in Leos[ v. State, 880 S.W.2d 180 (Tex. Ct. App.–Corpus Christi 1994, no writ)] and Raymond[ v. State, 640 S.W.2d 678 (Tex. Ct. App.–El Paso 1982, pet. ref'd),] to the extent that they hold that any effort to shake off an officer's detaining grip by 'simply pulling one's arm away' is not sufficient force to sustain a conviction for resisting arrest." (citations omitted)). However, we need not resolve the conflict. Huang did not dispute Scudder's testimony that she kicked the constable repeatedly in the shin during the incident. Kicking Scudder while he attempted to arrest her

19

constitutes using force against him.  Under these circumstances, a reasonable officer would have believed he had probable cause to arrest Huang for resisting arrest.

Scudder and Darbe have demonstrated probable cause for Huang's arrest, entitling them to the defense of qualified immunity.  Huang has failed to carry her summary judgment burden by producing competent evidence that would create a genuine issue of material fact on this issue.  The officers are entitled to qualified immunity on the § 1983 claim to the extent it was grounded on an alleged false arrest.

### B.  Excessive Force

"'All claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its "reasonableness" standard[.]'" Gutierrez v. City of San Antonio, 139 F.3d 441, 446 (5th Cir. 1998) (third alteration in original) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  To succeed on an excessive-force claim under the Fourth Amendment, the plaintiff bears the burden of showing:  "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." Williams v. Bramer, 180 F.3d 699, 703, clarified, 186 F.3d 633, 634 (5th Cir. 1999).  Although a showing of "significant injury" is no longer required in the context of an excessive force claim, this court does "require a plaintiff

20

asserting an excessive force claim to have 'suffered at least some form of injury.'" Id. (quoting Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993)).

To determine whether an injury caused by excessive force is more than de minimis, the court looks to the context in which that force was deployed. See id. "'[T]he amount of injury necessary to satisfy our requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances.'" Id. at 703-04 (alteration in original) (quoting Ikerd v. Blair, 101 F.3d 430, 434-35 (5th Cir. 1996)).

The right to make an arrest necessarily carries with it the right to use some degree of force or threat thereof to effect it. Graham v. Connor, 490 U.S. 386, 396 (1989); see also Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996) ("[E]ven in the fourth amendment context, a certain amount of force is obviously reasonable when a police officer arrests a dangerous, fleeing suspect."). When determining whether force used was excessive, "reasonableness" under the Fourth Amendment is judged according to the facts of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Continuing to view the events in her favor, Huang, having been verbally placed under arrest, asked Scudder if she could call someone to watch her children and proceeded towards the door of her home to use the phone after Scudder had told her she could not do so. Scudder followed her and slammed the phone out of her hand. Huang grabbed onto the door knob with her left hand and screamed for help as Scudder simultaneously grabbed her by the right wrist and put her down on the pavement by twisting her arm until her knees buckled. As Scudder pulled her away from the door, Huang grabbed the security gate with her left hand. Darbe arrived on the scene and helped Scudder turn Huang on to her stomach, handcuff her, and drag her to the police car.

Huang suffered a broken right thumb. In twisting her right wrist to bring Huang to her knees, Officer Scudder used a reasonable amount of force necessary to subdue Huang and prevent her from kicking him, pry her free hand first off of the door to her home and then off the iron security gate, and place her in handcuffs. Considering the way in which she resisted arrest, Huang's broken thumb was not caused by an unreasonable amount of force. The officers have established their entitlement to qualified immunity. Huang has again failed to come forward with any evidence, as is her burden, that there exist genuine issues of material fact whether the officers' conduct rose to the level of a constitutional violation. See Pierce, 117 F.3d at 871-72.

Summary judgment should have been granted in favor of the officers on the federal claims.

## C. State Claims

The district court denied Scudder and Darbe summary judgment on Huang's state claims for false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, and assault and battery. "[A]n order denying qualified immunity under state law is immediately appealable as a 'final decision,' provided that 'the state's doctrine of qualified immunity, like the federal doctrine, provides a true immunity from suit and not a simple defense to liability.'" Cantu v. Rocha, 77 F.3d 795, 803 (5th Cir. 1996) (quoting Sorey v. Kellett, 849 F.2d 960, 962 (5th Cir. 1988)).

Texas law of official immunity is substantially the same as federal qualified-immunity law. See id. at 808. It provides government officials with "official immunity" from suit for matters (1) arising from the performance of their discretionary duties, (2) if they are acting in good faith, and (3) within the scope of their authority. See Wren v. Towe, 130 F.3d 1154, 1160 (5th Cir. 1997) (citing City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994)).

Under Texas law, actions which involve "personal deliberation, decision, and judgment [are] discretionary," as opposed to ministerial "[a]ctions[,] that require obedience to orders or the performance of a duty to which the actor has no

23

choice." Tamez v. City of San Marcos, Tex., 118 F.3d 1085, 1097 (5th Cir. 1997). Neither Scudder nor Darbe was acting pursuant to orders, but instead they exercised their discretion as police officers in investigating the complaint, attempting to issue a citation, and arresting Huang. See id.

Whether an officer acts in "good faith" under Texas law is analyzed by an objective-reasonableness standard derived substantially from the standard for qualified immunity. See id. (citing Chambers, 883 S.W.2d at 656) (officer acts in "good faith" in a pursuit case if "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit"). As previously discussed in the Fourth Amendment context, Scudder's and Darbe's actions were objectively reasonable. Therefore, as a matter of Texas law, the officers acted in good faith. See id.

"An officer acts within the scope of his authority if he discharges the duties generally assigned to him." Id. There is no question that Scudder was fulfilling the duties of his office by responding to and investigating Huang's call and that Darbe fulfilled the duties of his office by responding to Scudder's call for back-up. We hold, therefore, that Scudder and Darbe are immune from suit for both the state claims and federal claims brought against them.

24

## V. CONCLUSION

We REVERSE the district court's denial of summary judgment and REMAND to the district court for entry of judgment in favor of Scudder and Darbe.  Costs shall be borne by Huang.