

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00701-CR

Julie Ann **JENKS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 4, Bexar County, Texas
Trial Court No. 608868
Honorable Alfredo Ximenez, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:     Luz Elena D. Chapa, Justice
     Beth Watkins, Justice
     Liza A. Rodriguez, Justice

Delivered and Filed: April 29, 2020

AFFIRMED

A jury found appellant Julie Ann Jenks guilty of interference with public duties. On appeal, Jenks argues that the evidence is legally insufficient to support her conviction. We affirm the trial court's judgment.

## BACKGROUND

Deputies from the Bexar County Sheriff's Office arrested Jenks on February 24, 2019 after responding to two 9-1-1 calls reporting a possible fight in progress at her home. On March 6, 2019, the State charged Jenks by information with the misdemeanor offense of interference with public

duties. The information alleged that Jenks interfered with Bexar County Sheriff's Deputy Jonathan Garcia's duty to investigate a complaint "by hindering communication."

At trial, Deputy Garcia testified that when he arrived at Jenks's residence, he found her husband, David Blomberg, outside looking for something in his truck. Deputy Garcia testified that Blomberg stated he had gotten into an argument with his wife, who was inside the home. Blomberg testified, however, that he told Deputy Garcia there had been no argument and he had come out to his truck to retrieve a tampon for his wife. Jenks—who could hear the conversation from inside the home—testified that Blomberg told Deputy Garcia that Jenks was in the bathroom. Before Deputy Garcia entered the home, he detained Blomberg in the back seat of his patrol car because he "wasn't too sure if [Blomberg] was a suspect, if he was the victim, if there was even an offense yet."

Inside the home, Deputy Garcia found four children between the ages of twelve and fifteen who were "unresponsive" and "weren't answering questions." He asked if there was an adult present, and they pointed toward the master bedroom. When Deputy Garcia entered the bedroom, he could see Jenks through the open door of the adjacent bathroom. He testified that he did not "see any kind of weapons, anything that stood out of place" when he scanned the bedroom and bathroom and that Jenks, who was sitting on the toilet with her pants down, appeared to be unharmed. He agreed that under those circumstances, a person in Jenks's position would "[m]ost definitely" be "irate." Jenks told Deputy Garcia to "[g]et the fuck out," and he testified that at that point, he went to the living room to question the children. In contrast, Jenks testified that she told Deputy Garcia to leave twice, but he shone his flashlight on her for "a good two minutes" and remained in the bathroom until she pulled up her pants. She also testified that she had to walk past him to leave the bathroom.

Jenks and Deputy Garcia agreed that by the time they both reached the living room, Jenks was "yelling and screaming" but did not use any physical force against Deputy Garcia. Jenks told her children to go to bed, but Deputy Garcia told them to stay in the living room. Jenks responded that if Deputy Garcia did not have a warrant, then he needed to leave her home. At trial, Jenks explained that it was a school night, and her children needed to get up for school early the next morning. The children followed Jenks's orders and left the living room without talking to Deputy Garcia.

Jenks then left the home through the front door. She testified that she did so because she still needed a tampon from Blomberg's truck. Deputy Garcia testified that Jenks left the home after threatening to "bust the [patrol car] window open" to release Blomberg. Both Deputy Garcia and his partner, Bexar County Sheriff's Deputy Maverick Moreland, testified that Jenks tried to open the car door to release Blomberg. Deputy Garcia testified that Jenks's attempt to open the car door was "distracting" and "interfer[ed] with [his] investigation" because he "couldn't communicate." He also testified that he could not question the children because "[his] focus had to shift to Ms. Jenks."

After considering the evidence, the jury found Jenks guilty of interference with public duties. The trial court assessed punishment at a $200 fine, court costs, and six months in jail, and it suspended and probated Jenks's jail sentence for six months. Jenks filed a motion for new trial, which the trial court denied. This appeal followed.

**ANALYSIS**

*Standard of Review*

In reviewing a complaint that the evidence presented at trial is legally insufficient to support a jury's guilty verdict, we must determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Adames v. State*,

353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Caballero v. State*, 292 S.W.3d 152, 154 (Tex. App.—San Antonio 2009, pet. ref'd). We view the evidence in the light most favorable to the jury's guilty verdict and resolve all reasonable inferences from the evidence in its favor. *Tate v. State*, 500 S.W.3d 410, 417 (Tex. Crim. App. 2016). "Because the jury is the sole judge of witness credibility and determines the weight to be given to testimony," we must defer to its determinations. *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd). "If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm the trial court's judgment." *Hernandez v. State*, 198 S.W.3d 257, 260 (Tex. App.—San Antonio 2006, pet. ref'd).

### Applicable Law

A person commits the offense of interference with public duties if she "with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law[.]" TEX. PENAL CODE ANN. § 38.15(a)(1). Section 6.03(d) of the Texas Penal Code provides:

> A person acts with criminal negligence . . . with respect to circumstances surrounding [her] conduct or the result of [her] conduct when [she] ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(d). It is a defense to the charge of interfering with the duties of a public servant "that the interruption, disruption, impediment, or interference alleged consisted of speech only." *Id.* § 38.15(d).

### Application

Jenks contends that the State's evidence consisted solely of testimony that she argued with the deputies and told her children to go to bed. She claims her actions consisted of speech only,

which is legally insufficient to support her conviction under Texas Penal Code section 38.15(d). *See id.* The State responds that Jenks's command to her children "was more than mere speech." It also argues that Jenks distracted Deputy Garcia by trying to release Blomberg from the patrol car.

"The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987). Evidence that an individual merely argued with police officers will not support a conviction for interference with public duties, "even if the end result is 'stalling'" the officers' execution of their duties. *Carney v. State*, 31 S.W.3d 392, 398 (Tex. App.—Austin 2000, no pet.). In *Carney*, the appellant was convicted of interference with public duties "by blocking the entry of [a peace officer] into a residence." *Id.* at 396. While the evidence showed the appellant stalled the officer's entry into the home by arguing with him, there was no evidence he blocked the door or took any other physical actions to impede the officer. *Id.* at 398. Under those facts, the Third Court of Appeals concluded that appellant's conduct consisted solely of speech, and it reversed his conviction for interference with public duties. *Id.* at 398–99.

Here, however, the evidence is not so limited. The State also presented evidence of Jenks's non-speech conduct. *See Mathis v. State*, 04-18-00372-CR, 2019 WL 1139837, at *1 (Tex. App.—San Antonio Mar. 13, 2019, pet. ref'd) (mem. op.) (not designated for publication) (affirming a "hindering communication" conviction for interference with public duties based on physical actions). Deputy Garcia testified that while he was trying to question the children, Jenks left the home and attempted to open the patrol car door to release her husband. While Jenks argues that this non-speech action cannot "be considered to be interfering with Deputy Garcia's investigation by 'hindering communication,'" Deputy Garcia testified that this act distracted him from his investigation because "[his] focus had to shift to Ms. Jenks." He also testified that Jenks's action

interfered with his performance of his duties by "[n]ot allowing [him] to get back into the house" to question the children.

Although Jenks steadfastly denied that she had attempted to open the door to the patrol car, the jury had the sole authority to resolve the conflict between her testimony and Deputy Garcia's. *See Wells v. State*, 319 S.W.3d 82, 92 (Tex. App.—San Antonio 2010, pet. ref'd). When viewed in the light most favorable to the verdict, this evidence would allow a reasonable factfinder to conclude beyond a reasonable doubt that Jenks's physical actions—not merely her speech— interfered with Deputy Garcia's duty to investigate the 9-1-1 call by hindering communication. Accordingly, we overrule Jenks's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH