**Donald Ray WHITE, Plaintiff–Appellee,**

v.

**Armando BALDERAMA, Defendant–Appellant.**

No. 97–50612.

United States Court of Appeals, Fifth Circuit.

Aug. 31, 1998.

238

Joseph Andrew Turner, Terrence W. Kirk, Law Office of Joseph A. Turner, Austin, TX, for White.

Robin Elizabeth Sanders, Austin, TX, for Balderama.

Before KING, SMITH and PARKER, Circuit Judges.

PER CURIAM:

Defendant-appellant Armando Balderama appeals the district court's order denying his motion for summary judgment on the basis of qualified immunity as to plaintiff-appellee Donald Ray White's claim under 42 U.S.C. § 1983. For the reasons set forth below, we retain jurisdiction and remand with instructions that the district court set forth the factual scenario that it assumed in construing the summary judgment evidence in the light most favorable to plaintiff-appellee Donald Ray White.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-appellee Donald Ray White, proceeding pro se, initiated this action against defendant-appellant Armando Balderama, a police officer in the Austin Police Department, in July 1996, claiming that Balderama used excessive force in attempting to effect White's arrest on August 3, 1994.[1] The parties agree that, on August 3, 1994, around 8:30 or 9:00 p.m., Balderama, while on duty, responded to a complaint of reckless driving in South Austin. Balderama came upon the suspect vehicle on the side of the road and, as it was dark out, shined his spotlight on the vehicle and exited his patrol car. The vehicle had two occupants—White was in the driver's seat, and another individual was in the passenger seat. White does not dispute that Balderama was aware that the vehicle White was driving was stolen, that he was a forgery suspect who had fled from another officer the previous day, and that he was suspected of unauthorized use of a motor vehicle and reckless driving. At this point, the parties' versions of the facts underlying this case diverge.

According to White's sworn pro se complaint, he "attempted to pull up next to the police car to try and 'play-it-cool' and ask [Balderama] what the problem was." He claims that, as he moved his vehicle forward, Balderama commenced shooting at him. Believing his life was in danger, White claims

---

1. While White filed his complaint pro se, on April 11, 1997, the district court granted his motion requesting the appointment of counsel.

that he drove off, as Balderama continued shooting at him. White states in his affidavit that Balderama fired two shots after White's vehicle had already passed him. He received a bullet wound to the right leg.

Balderama claims in his affidavit that, after shining his spotlight on White's vehicle, the motor of which was still running, he yelled for the occupants to show him their hands. Balderama claims that, instead of complying with his order, White gunned the engine and aimed the vehicle toward him. Fearing that White's vehicle would either run into him head-on or crush him against his patrol car in the event that it spun out, Balderama fired three shots from his .38 caliber service revolver at White. He claims that he fired all three shots as the vehicle approached him and that he did not fire the first shot until White's vehicle had cleared twenty of the initial forty feet between it and Balderama.

On May 7, 1997, Balderama filed a motion for summary judgment, claiming that he was entitled to qualified immunity. White filed his response to Balderama's motion for summary judgment on July 7, 1997, and, on July 18, 1997, the district court entered an order denying the motion on the following grounds:

Balderama's initial reaction is beyond reproach. White has not denied that Officer Balderama issued a verbal order for the vehicle occupants to raise their hands. Nor has he controverted Balderama's estimate that the vehicle was approximately forty feet from Balderama before it left its original position. Under these circumstances, Officer Balderama arguably acted reasonably in deciding to shoot when the driver of the car, a suspected felon, failed to obey his order and instead drove the vehicle in his direction, regardless of whether plaintiff's or defendant's version of the manner in which the vehicle was driven is believed. Plaintiff's allegation that Balderama fired two shots after the vehicle had already passed is more troubling, however. While the Court can conceive of circumstances in which continuing to fire at the vehicle after it passed would be reasonable, it can also conceive of circumstances in which it would not. The

evidence before the Court does not conclusively rule out those possibilities and thus Balderama is not entitled to qualified immunity.

On June 21, 1997, Balderama filed a "response" to White's response to his motion for summary judgment, which the district court treated as a motion for reconsideration. Along with his "response," Balderama submitted a drawing prepared by an accident investigator that purported to represent the scene of the confrontation between White and Balderama along with the investigator's affidavit. Balderama contended that this evidence conclusively established that the first shot fired by Balderama was the round that struck White, which rendered the possibility that Balderama acted unreasonably in firing the second and third shots immaterial. On July 22, the district court entered an order reaffirming its earlier order denying summary judgment on the following grounds:

The Court has reconsidered its order of July 18, 1997 in light of [Balderama's] newly proffered summary judgment evidence and concludes that summary judgment is still not appropriate in this case. The newly proffered summary judgment evidence, while otherwise persuasive, includes a reconstruction drawing ... that, when considered with Plaintiff White's affidavit, confirms that a fact issue remains as to whether Officer Balderama could reasonably have considered himself endangered to the extent that the level of force he used in response was objectively reasonable. Defendant is still, therefore, not entitled to qualified immunity as a matter of law.

Balderama timely filed a notice of appeal from these two orders of the district court.

## II. DISCUSSION

On appeal, Balderama contends that the district court erred in denying his summary judgment motion on the basis of qualified immunity because the summary judgment evidence, viewed in the light most favorable to White, indicates that Balderama is entitled to judgment as a matter of law. Because of the nature of the district court's orders denying summary judgment, it is not altogether

clear whether we possess jurisdiction over Balderama's appeal.

■ In *Colston v. Barnhart,* 146 F.3d 282 (5th Cir.1998), *denying reh'g in* 130 F.3d 96 (5th Cir.1997), we recently observed that when a district court denies summary judgment on the basis that genuine issues of material fact exist, it has made the following distinct legal conclusions:

> First, the court has concluded that the issues of fact in question are genuine, i.e., the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party [with respect to the particular fact issues]. Second, the court has concluded that the issues of fact are material, i.e., resolution of the issues might affect the outcome of the suit under governing law.

*Id.* at 284 (citations omitted). The Supreme Court's recent jurisprudence on interlocutory appeals from denials of summary judgment on the basis of qualified immunity indicates that we possess jurisdiction to hear an interlocutory appeal challenging the materiality of the fact issues that led the district court to deny summary judgment but that we lack jurisdiction to hear interlocutory appeals challenging the genuineness of those fact issues. *See Johnson v. Jones,* 515 U.S. 304, 307, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ("The order [denying summary judgment on the basis of qualified immunity] resolved a fact-related dispute about the pretrial record, namely whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial. We hold that the defendants cannot immediately appeal this kind of fact-related district court determination."); *see also Behrens v. Pelletier,* 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (noting that "*Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment [was objectively reasonable]," i.e., that the factual issues that the district court resolved in favor of the nonmovant are immaterial to his right of recovery); *Colston,* 146 F.3d at 284 ("*Johnson* makes clear that an appellate court may not review a district court's determination that

the issues of fact in question are genuine.... *Behrens,* on the other hand, makes clear that an appellate court is free to review a district court's determination that the issues of fact in question are material.").

We further observed in *Colston* that the specificity of the district court's order denying summary judgment dramatically affects the ease with which we can apply the *Johnson/Behrens* rule:

> When the district court denies a motion for summary judgment and merely states that "genuine issues of material fact remain" without identifying those issues, application of the *Johnson/Behrens* rule becomes significantly more problematic. On interlocutory appeal, the defendant will argue that the factual issues the district court has found in dispute are immaterial. In doing so, the defendant will doubtless set forth a factual scenario that he claims is the scenario supported by the summary judgment evidence viewed in the light most favorable to the plaintiff. He will then proceed to argue that, even under this factual scenario, he is entitled to qualified immunity. Without a statement from the district court as to which particular issues of fact it found in dispute, however, it will be impossible for the appellate court to determine whether the defendant's version of the facts viewed in the light most favorable to the plaintiff mirrors the district court's version of the facts viewed in the light most favorable to the plaintiff. If the appellate court cannot make this determination, then it will be unable to conclude whether the defendant is properly challenging the materiality of the factual issues the district court determined to be in dispute or whether the defendant is in effect improperly challenging the genuineness of those issues.

*Id.* at 285–86.

■ While the district court did more in this case than simply state that genuine issues of material fact preclude summary judgment, its orders still create the difficulty discussed in *Colston.* The court's first order seems to indicate that the summary judgment evidence, viewed in the light most favorable to White, indicates that Balderama

acted in an objectively reasonable manner in firing his initial shot at White but that genuine issues of material fact exist as to whether Balderama acted reasonably in continuing to shoot at White's vehicle after the first shot because the summary judgment evidence, construed in White's favor, indicates that Balderama fired the successive shots after White's vehicle had already passed him. The court's second order states that Balderama's "newly proffered summary judgment evidence, while otherwise persuasive, ... when considered with Plaintiff White's affidavit, confirms that a fact issue remains as to whether Officer Balderama could reasonably have considered himself endangered to the extent that the level of force that he used in response was objectively reasonable." From this statement, it is not clear whether the district court reconsidered its earlier apparent conclusion that Balderama acted reasonably in initially choosing to shoot at White or whether it adhered to its original position and concluded that the newly proffered summary judgment evidence did not eliminate the genuineness of the unspecified factual issues that initially prompted it to deny Balderama's motion for summary judgment.

■ In effect, the district court's statement that "a fact issue remains as to whether Officer Balderama could reasonably have considered himself endangered to the extent that the level of force he used in response was objectively reasonable" tells us nothing more than that the district court concluded that a genuine fact issue exists as to whether Balderama violated clearly established law. In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that the Fourth Amendment governs a free citizen's claim that a law enforcement officer used excessive force in effecting an arrest and that the appropriate constitutional inquiry is therefore whether the amount of force used was objectively reasonable under the circumstances. *See id.* at 388, 109 S.Ct. 1865. While it is true that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and that "proper application [of the Fourth Amendment objective

reasonableness test] requires careful attention to the facts and circumstances of each case," *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, the ultimate determination of Fourth Amendment objective reasonableness is a question of law. *See United States v. Rich*, 992 F.2d 502, 505 (5th Cir.1993); *United States v. Russell*, 960 F.2d 421, 423 (5th Cir.1992).

The district court's conclusion that genuine issues of material fact preclude a conclusive determination that Balderama did not violate clearly established law may have been predicated upon any number of potential factual issues, but the court did not specify what factual issues led it to this conclusion. Thus, we are unable to determine whether Balderama's statement in his appellate brief of the facts viewed in the light most favorable to White comports with the district court's conception of the facts viewed in the light most favorable to White, and thus whether Balderama is making a reviewable materiality challenge or an unreviewable genuineness challenge on appeal.

This problem is exemplified by Balderama's claim that the summary judgment evidence, viewed in the light most favorable to White, indicates that "[o]nly the first shot [fired by Balderama] struck [White], resulting in a superficial wound to the right thigh." Based upon the district court's orders, we have no way of determining whether the district court reached the same conclusion. If it did not, but rather concluded that the summary judgment evidence, viewed in the light most favorable to White, indicates that either Balderama's second or third shot hit White, we would lack jurisdiction to review this determination on interlocutory appeal. This would be true even if our own review of the record uncovered *no* summary judgment evidence indicating that any shot other than the first hit White because we would be reviewing the sufficiency of the evidence for a fact-finder to determine that the second or third shot hit White. *See Behrens*, 516 U.S. at 313, 116 S.Ct. 834 ("*Johnson* held ... that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they arise in a qualified-immunity case...").

242

In *Johnson* and *Behrens*, the Supreme Court indicated that, in order to deal with the problem created by a lack of specificity in a district court's order denying summary judgment on the basis of qualified immunity, we have the authority to " 'undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.' " *Id.* (quoting *Johnson,* 515 U.S. at 319, 115 S.Ct. 2151). However, we conclude that a more efficient alternative exists for making this determination in this case: a limited remand to the district court for the purpose of allowing it to articulate specifically what factual scenario it believes emerges from viewing the summary judgment evidence in the light most favorable to White.

Once the district court sets forth the factual scenario that it assumed in construing the summary judgment evidence in the light most favorable to White, we will be able to determine whether the statement of facts arising from viewing the summary judgment evidence in the light most favorable to White set forth by Balderama on appeal comports with the facts that the district court assumed in denying summary judgment. To the extent that Balderama's arguments on appeal depend upon portions of his statement of facts that differ from the facts the district court assumed, we lack jurisdiction to consider them because they involve challenges to the sufficiency of the evidence to establish the facts assumed by the district court. *See id.* However, to the extent that Balderama's arguments on appeal do not hinge upon such differences, we possess jurisdiction to review them because they constitute a claim "that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment [was objectively reasonable]." *Id.*

### III.  CONCLUSION

For the foregoing reasons, we retain jurisdiction over the appeal[2] and REMAND to the district court with instructions that, with-

in sixty days after entry of this remand, it provide a supplemental order setting forth the factual scenario that it assumed in construing the summary judgment evidence in the light most favorable to White and therefore denying Balderama's motion for summary judgment based on qualified immunity. The clerk of this court is directed to return the record to the district court. When the district court's supplemental order is entered in the district court, the clerk of the district court shall return the record, as so supplemented, to this court for disposition by this panel of this appeal.

---

**2.**  While we have not yet determined whether we possess jurisdiction to hear Balderama's appeal, "it is axiomatic that this court always has jurisdiction to determine its own jurisdiction." *In re*

*McBryde,* 120 F.3d 519, 522 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998).