# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 19, 2013

No. 11-51069

Lyle W. Cayce
Clerk

WILL AGUILAR,

Plaintiff-Appellee

v.

DANIEL ROBERTSON; MICHAEL BAXTER,

Defendants-Apellants

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:11-CV-278

Before BENAVIDES, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

This is a Section 1983 suit brought by Will Aguilar, a motorcyclist who was injured in a traffic stop. He claims two deputies in the Williamson County Sheriff's Office, Daniel Robertson and Michael Baxter, used excessive force to arrest him. The district court denied the deputies' motions that had sought summary judgment based on qualified immunity. The deputies appeal. We REVERSE as to Deputy Robertson, AFFIRM as to Deputy Baxter, and REMAND.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-51069

## FACTS

On April 9, 2009, Will Aguilar was riding his motorcycle on a rural road in Williamson County, Texas. His affidavit states that as he rode around a turn, he saw Deputies Daniel Robertson and Michael Baxter standing in the middle of the road waving for him to stop. Aguilar states that upon seeing the deputies, he used his brakes and had almost stopped when he reached Deputy Robertson.

The details of what Aguilar and the deputies each did is disputed, though whether those disputes are material is a question we will address later. At this point, it is enough to say that Aguilar was knocked from his motorcycle to the pavement and suffered injuries. He was transported to a hospital and was diagnosed with a broken clavicle.

Aguilar was charged with aggravated assault of an officer with a deadly weapon (i.e., the motorcycle). The case was presented to a grand jury, which did not indict him.

Aguilar brought this suit against Williamson County and the two deputies, Robertson and Baxter, in the United States District Court for the Western District of Texas, relying on 42 U.S.C. § 1983. Aguilar alleged the deputies used excessive force in stopping him for speeding. Robertson and Baxter filed a motion for summary judgment on the basis of qualified immunity, which the district court denied. Robertson and Baxter appealed.

During the pendency of this appeal, the county moved for summary judgment. The district court denied the motion as premature, as that court is awaiting the ruling of this court on the appeal.

## DISCUSSION

A district court's order denying qualified immunity is a collateral order that is immediately appealable "to the extent that it turns on a question of law rather than a factual dispute." *Elizondo v. Green*, 671 F.3d 506, 509 (5th Cir. 2012). Qualified immunity should be granted to a deputy unless, first, the

deputy's "conduct would, as a matter of law, be objectively unreasonable in light of clearly established law," and, second, at least "a genuine issue of fact exists regarding whether the [deputy] did, in fact, engage in such conduct." *Cantrell v. City of Murphy*, 666 F.3d 911, 921 (5th Cir. 2012) (quotation marks omitted). This court's review is limited to whether the deputies' conduct was "objectively unreasonable in light of clearly established law." *Id.* at 922.

Ordinarily, this court reviews a district court's denial of summary judgment *de novo*. *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004). In an interlocutory appeal, though, "we lack the power to review the district court's decision that a genuine factual dispute exists." *Id.* at 348. Therefore, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id.*

Aguilar's claim is that these deputies used excessive force to arrest him. The claim is analyzed under the Fourth Amendment's reasonableness standard, which requires "two overlapping objective reasonableness inquiries." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quotation marks omitted). First, a constitutional violation occurs if the plaintiff demonstrates (1) an injury (2) which "resulted directly and only from the use of force that was excessive to the need" and (3) the force used was objectively unreasonable. *Bush v. Strain*, 513 F.3d 492, 500-01 (5th Cir. 2008). Then, "we must ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable." *Lytle*, 560 F.3d at 410. Aguilar was injured as a result of the arrest, but the deputies claim the force was not excessive and no clearly established constitutional duty existed to refrain from the actions they took to stop and detain Aguilar.

No. 11-51069

We first determine what must be accepted at this point as the relevant facts. Aguilar's version of events was set out in his affidavit. After seeing the deputies, Aguilar began to slow his motorcycle. He estimates he was still traveling one to three miles per hour and not yet completely stopped when "Defendant Robertson then hit [Aguilar's] left shoulder with his left hand, fracturing [Aguilar's] clavicle in [his] left shoulder. It was obvious to [Aguilar] that it was an intentional strike on his part on [Aguilar's] shoulder."

Robertson's version, most of which is not disputed by Aguilar, is basically consistent. Robertson stated that Aguilar was traveling at 65 miles per hour in a 40 miles-per-hour zone. Aguilar had an unobstructed view of the deputies, who were both wearing uniforms. Baxter and Robertson began waving their arms to cause Aguilar to stop. As Aguilar approached, Robertson took a step into the path of the motorcycle and put his hands out. Robertson agrees that Aguilar was braking hard, but contends Aguilar was not stopping fast enough. Robertson continued waving his arms while stepping out of the way. When Aguilar passed, Robertson alleges his "left hand caught the [driver's] left shoulder." This caused Robertson to "spin around and hit the ground causing abrasions to [his] right hand, pain in [his] right ankle and [a] rip in [his] pants under the right knee."

As to Baxter, Aguilar stated that a few seconds after Robertson hit Aguilar on the shoulder, Baxter tackled Aguilar, knocking him off the motorcycle onto the ground, causing further injury to his shoulder. Aguilar stated Baxter took out his gun and hit him in the front of the head with it, then poked him with it on his face shield, and kicked him in the leg. Aguilar maintains that he did not resist arrest or take actions that would indicate he intended to flee. He states he kept his hands in the air to indicate he was not a threat to the deputies.

Baxter's account in his affidavit differs somewhat. He alleges that Aguilar slowed and rolled past Baxter after coming into contact with Robertson. Baxter

4

shouted at Aguilar to stop. Baxter continued to give these orders after Robertson fell, and the motorcycle rolled slowly forward with Aguilar still astride it. Baxter believed Aguilar was going to flee because of Aguilar's failure to comply with the order to stop, and because Aguilar was looking in Baxter's direction and also at the motorcycle. At that point, Baxter decided to push Aguilar, causing him and the motorcycle to fall over. Aguilar fell on his left side. Baxter put his firearm to Aguilar's helmet's face shield while trying to grab his jacket. By this time, Robertson had gotten up and he "grabbed [Aguilar's] left hand [and] rolle[d] him over allowing [Aguilar] to be cuffed by Deputy Roberston."

For each deputy, the question is whether his actions were objectively unreasonable due to a clearly established constitutional duty not to use the kind of physical force he employed, and whether that duty was established at the time of the incident. "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

The right to use some degree of force to effectuate an arrest or investigatory stop is clearly established. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The deputies assert the law lacked clarity, meaning that every reasonable officer in this situation would not understand that the chosen force was of a degree that violated a constitutional right. In determining whether an officer's conduct violated a constitutional right, courts examine whether the right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Despite the lack of a precedent with the exact facts, the law can be clearly established from factually distinguishable cases "so long as the prior decisions gave reasonable

warning that the conduct then at issue violated constitutional rights." *Lytle*, 560 F.3d at 417.

The deputies point to three cases in which the degree of force was held to be reasonable under the circumstances. First, a district court determined that an officer pointing a gun at the plaintiff for 20 seconds in the process of serving an arrest warrant was not objectively unreasonable. *Greene v. Knight*, 564 F. Supp. 2d 604, 612-13 (N.D. Tex. 2008). Second, the Second Circuit held it was not unreasonable under the circumstances for an officer to point his gun at the plaintiff's head when the plaintiff was struggling with two other officers. *Davis v. Rodriguez*, 364 F.3d 424, 427, 431 (2d Cir. 2004). Finally, a district court held that a leg sweep technique employed by an officer to knock the plaintiff down was not unreasonable. *Kellough v. Bertrand*, 22 F. Supp. 2d 602, 608 (S.D. Tex. 1998). In *Kellough*, an armed robbery had recently occurred in the area; the officers suspected the plaintiff might be involved, and he refused to follow the officers' instructions. *Id.* We conclude that it was clearly established that some degree of force was permissible in effectuating an arrest where the suspect fails to comply with an officer's orders.

In contrast, cases in which the degree of force used violated a constitutional right generally involved fairly significant acts of force. For example, we have held that an officer pushing an arrestee's head into the window of a car resulting in injuries to her face, teeth, and jaw was not objectively reasonable, even if she was initially resisting. *Bush*, 513 F.3d at 496, 501. The court reasoned that though the officer had a viable argument for using some force when the plaintiff initially resisted arrest, according to the plaintiff at least part of the officer's actions occurred after he had control of her. *Id.* at 502. Additionally, we have affirmed the denial of summary judgment based on qualified immunity where a police officer broke the plaintiff's window with his flashlight when she refused to exit the vehicle, dragged her out of the car, and

threw her against the window. *Deville v. Marcantel*, 567 F.3d 156, 162 (5th Cir. 2009). The plaintiff had been pulled over for exceeding the speed limit by 10 miles per hour and testified there was no indication she might flee. *Id.* at 167. The plaintiff alleged she only passively resisted the officers by refusing to get out of her vehicle until her husband arrived. *Id.*

We now examine the evidence as to each deputy's conduct.

## A. *Deputy Robertson*

Some level of force may be used by a deputy to stop a violation of the law. *Graham*, 490 U.S. at 396. Aguilar asserts his certainty that Robertson intended to hit him on the shoulder. Even if such an intent would make Robertson's conduct more questionable, and we are not sure it does, intent does not matter under qualified immunity analysis. We examine the *objective* reasonableness of the deputy's conduct. *Cantrell*, 666 F.3d at 921. It was objectively reasonable for Robertson to use some force to detain Aguilar for speeding. These are the relevant facts alleged by Aguilar as viewed from the perspective of a reasonable officer: Aguilar was traveling at a high rate of speed; Robertson was in the middle of the road waving Aguilar down; Robertson could see Aguilar braking from at least 20 feet away; and Aguilar was still moving when he reached Robertson.

Permissible force depends on "the [1] severity of the crime at issue, [2] whether the suspect posed a threat to the officer's safety, and [3] whether the suspect was resisting arrest or attempting to flee." *Deville*, 567 F.3d at 169.

As to the first element, both Robertson and Baxter stated that Aguilar was traveling 65 miles per hour in a 40 miles per hour zone. Aguilar does not assert otherwise. Stopping someone for speeding might not warrant the same amount of force as in *Davis*, where the officer saw the plaintiff struggling with other officers, or in *Kellough*, where a robbery suspect was in the area. *Davis*, 364

No. 11-51069

F.3d at 427; *Kellough*, 22 F. Supp. 2d at 606. Similarly, the force used in *Greene* while serving a warrant is distinguishable because that kind of situation could escalate quickly. *Greene*, 564 F. Supp. 2d at 613. The severity of the violation here is between that of a speeding violation for traveling 10 miles per hour over the limit and that of serving a warrant.

Next, the potential threat posed to the deputy weighs in Robertson's favor. Aguilar posed a threat because he was still moving and traveling towards Robertson. Like serving a warrant, the situation could have become more dangerous. Recognizing Aguilar was slowing down, Robertson had stepped in front of the motorcycle and was in its path – a dangerous position even if the motorcycle was traveling slowly.

Finally, whether Aguilar was resisting arrest or attempting to flee is disputed. The deputies were gesturing for him to stop, and Aguilar insists he was trying to comply. Aguilar's version of events is that he was still moving on his motorcycle when Robertson hit him on the shoulder. He admits two deputies were in the middle of the road waving for him to stop. Robertson was at least close enough to Aguilar to strike him, and Aguilar was still moving despite his close proximity to the deputy. We find no basis to hold that every reasonable officer would know at the time of this incident that hitting a motorcycle rider on the shoulder who had so far not stopped despite being ordered to do so, and despite being immediately adjacent to the deputy on the moving motorcycle, would have violated the motorcycle rider's constitutional rights. Between fending off the approaching rider, and assuring he stops as opposed to picking up speed as soon as he passed the deputies, the striking of a rider on the shoulder was not objectively unreasonable.

The relevant precedents in which qualified immunity was denied do not suggest otherwise. Unlike in *Bush*, Robertson was not already in control of Aguilar when he struck him. Unlike in *Deville*, Aguilar was not in a stopped

8

No. 11-51069

vehicle, he could have fled, and his traffic violation was at least somewhat more severe – 25 miles per hour over the speed limit as opposed to 10.  Further, the amount of force used by Robertson was of a lesser degree than in *Deville*.

We conclude that not every reasonable official in Robertson's circumstances would have known this conduct violated the Constitution. We reverse the denial of qualified immunity as to Robertson and remand to the district court for entry of judgment dismissing him from the suit.

### B.    *Deputy Baxter*

Baxter contends he committed no constitutional violation because he did not cause Aguilar's shoulder injury.  Instead, he argues that it was Robertson who caused that injury.  Baxter also contends he had no clearly established constitutional duty to refrain from using force in stopping Aguilar and his actions were objectively reasonable.

To succeed on an excessive-force claim, Aguilar must demonstrate that he "suffered at least some form of injury" from the defendant's actions that is more than *de minimis*.  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (quotation marks omitted).  The degree of injury necessary to meet this requirement is related to the amount of force that was constitutionally permissible under the facts of the case.  *Williams v. Brammer*, 180 F.3d 699, 703-04 (5th Cir. 1999).

Aguilar's affidavit indicates that Baxter's actions caused injury to his left shoulder. Though Aguilar's affidavit states that Robertson's contact with his left shoulder fractured his clavicle, he also states that his left shoulder was further injured when Baxter knocked him off his motorcycle onto the ground.  Tackling the driver of a stopped motorcycle onto the ground is a significant amount of force. Aguilar's statements that this caused further injury is sufficient to

9

establish "some injury" under these circumstances for purposes of denying qualified immunity on summary judgment. *See Williams*, 180 F.3d at 704.

Baxter next argues the district court erred in denying his motion for summary judgment on the grounds of qualified immunity because he did not violate a clearly established constitutional right. Under Aguilar's version of the facts, he had a right to be free from being tackled by Baxter once he had stopped and was not resisting the deputies. We acknowledge here that Baxter has a different version of events, particularly as to whether Aguilar was ignoring his commands and was potentially going to drive away.

As already discussed, there is not established law regarding the reasonable use of force in the detention of a motorcycle driver by deputies on foot. Nonetheless, the law is clear that once the plaintiff stops resisting or is in the deputy's control, the permissible degree of force lessens. *See Bush*, 513 F.3d at 502. In *Bush*, the court reasoned that the force used after the plaintiff ceased resisting was excessive. *Id.* at 501. Similarly, according to Aguilar's version of the facts, he was stopped when Baxter tackled him. Aguilar contends that the deputies did not make any oral commands before Baxter knocked him off the motorcycle. Crediting Aguilar's version of the facts, Baxter tackled him off the motorcycle onto the ground, used his firearm to hit and poke Aguilar in the head and visor, and kicked him in the leg. Joining these allegations with Aguilar's insistence that he was stopped, not ignoring commands, and was not resisting arrest, we conclude Baxter violated Aguilar's constitutional rights.

We must now decide, when viewing the facts from Baxter's perspective, if all reasonable officials in his situation would have known this conduct violated a constitutional right. We analyze the nature of the force used by Baxter under the same test we applied to Robertson's actions. *Deville*, 567 F.3d at 169. The crime is the same. Aguilar was traveling 25 miles per hour over the speed limit, which is significant but less so than being served with a warrant or resisting

arrest. Whether Aguilar was attempting to flee and the potential threat to officer safety are different for Baxter than for Robertson. As in *Deville*, Aguilar asserts he was neither resisting nor threatening Baxter, and when Baxter knocked Aguilar off the motorcycle, pointed his firearm at him, and kicked him, the motorcycle was stopped. *See Deville*, 567 F.3d at 167.

By the time of Baxter's actions, though, one more event had occurred, namely, Robertson had fallen to the pavement. Baxter saw that contact between Robertson's hand and Aguilar's shoulder is what caused the fall. That fact does not add to the level of acceptable force, though, because even Baxter's affidavit does not state he believed Robertson had been knocked down because of Aguilar's intentional act. Baxter said: "As the motorcycle passed Deputy Robertson, the rider's left shoulder struck Deputy Robertson's left hand causing him to spin around to his left 180 degrees and fall face down on the pavement." There is some ambiguity, as Aguilar's insistence about how slow he was going would not seemingly result in so violent a force on Robertson. Yet based on the evidence viewed in the light most favorable to Aguilar, there was no basis for Baxter to believe from Robertson's fall that Aguilar was a threat.

All reasonable officers would have known in the circumstances of someone completely stopped on a motorcycle for speeding, who was not resisting arrest, who had neither committed nor threatened any crime besides the speeding, that tackling the rider and forcing him to the ground would violate a constitutional right. The actual evidence on remand might present a different picture, but it was proper to deny summary judgment as to Baxter.

We reverse the denial of qualified immunity as to Robertson, affirm the district court's denial of summary judgment as to Baxter, and remand to the district court for proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.

No. 11-51069

BENAVIDES, Circuit Judge, dissenting:

Because I would affirm the district court's denial of summary judgment as to both Baxter and Robertson, I respectfully dissent from the majority's determination reversing the district court as to Robertson and dismissing him from the case.

As the majority notes, this court's review of an interlocutory appeal from a district court's denial of summary judgment differs from our typical de novo review of summary judgment rulings. With respect to an interlocutory appeal asserting qualified immunity, "an appellate court may not review a district court's determination that the issues of fact in question are genuine." *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir. 1998) (on denial of reh'g en banc) (citing *Johnson v. Jones*, 515 U.S. 304 (1995)). Instead, our jurisdiction is limited to reviewing de novo whether the district court correctly determined "that the issues of fact in question are material." *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996)); *see also Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (en banc). In other words, while we are barred from second-guessing the district court's finding of a genuine factual dispute, we may consider whether the plaintiff's version of the facts, assumed to be true, nonetheless fails to support the district court's denial of summary judgment when considered in light of the legal standards governing qualified immunity. *See Juarez v. Aguilar*, 666 F.3d 325, 331–32 (5th Cir. 2011) ("Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the [plaintiff's] version of the facts as true."); *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 341 (5th Cir. 2001). As stated by the majority, qualified immunity should be denied if a defendant's conduct is objectively unreasonable under clearly established law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Applying this standard of review, the question before this court is whether, accepting Aguilar's version of

12

No. 11-51069

the facts as true, the district court correctly found that, under clearly established law, Robertson used excessive force in stopping Aguilar.

Under clearly established law, excessive force is triggered by a defendant's objectively unreasonable conduct, which is assessed through a fact-intensive review of the totality of the circumstances. *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). I agree with the majority that, pursuant to this objective reasonableness test, "some degree of force" is permissible in making an arrest or an investigatory stop. But it is also clear that force—irrespective of degree—is only permissible to the extent that it is actually needed to effectuate an arrest or stop. *See Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 208 (2001)). In this case, I do not believe that the facts, as presented by Aguilar, indicate that Robertson could have reasonably believed that *any* force was necessary to stop Aguilar, and surely not the degree of force alleged by Aguilar. Specifically, Aguilar claims that, after noticing the deputies waving at him from the middle of the road, he "hit the brakes in order to stop." Pl.'s Resp., Att. 1 at 1. Before Aguilar was able to come to a complete stop, however, Robertson intentionally[1] struck him with enough force to fracture his left shoulder clavicle bone. *Id.* Aguilar also alleges that, at the time of contact, he had almost come to a complete stop and was traveling "approximately one to three miles per hour." *Id.* Accepting these facts as true, I do not find that an officer could have objectively believed that any force was necessary to stop Aguilar and I therefore

---

[1] Robertson's allegedly intentional contact is important to this case, not in order to show bad intent, which is irrelevant to our objective reasonableness inquiry, *see Graham*, 490 U.S. at 397; *Harlow*, 457 U.S. at 817–18, but rather to point out that Aguilar disputes Robertson's claim that Aguilar struck Robertson's hand as Aguilar passed him. *See* Br. of Appellants 7. Indeed, this is one of the genuine disputes of material fact on which the district court's decision focused, R. 251, and our task is to decide whether this factual dispute is material, not to question whether the dispute is genuine.

13

agree with the district court that Robertson "used more force than was reasonably necessary under the circumstances." R. 250.

My conclusion that no force was necessary is confirmed by the fact that Robertson has never argued that he struck Aguilar in order to reasonably effectuate a stop. Instead, in his offense report Robertson contended that the contact was accidental, and this is the same version of events that the appellants urge this court to adopt on appeal. *See* R. 56 ("As the motorcycle passed, my left hand caught the driver[']s left shoulder."); Br. of Appellants 7, 20. We have no jurisdiction on this interlocutory appeal to consider the genuineness of this factual dispute, and we therefore accept Aguilar's version of the facts rather than Robertson's. Nonetheless, Robertson's allegations illustrate that the key issue in this case is not the legal question of whether Robertson's use of force was reasonable. Instead, the key issue is one of pure fact: whether Aguilar was attempting to stop before he was struck by Robertson, or whether he deliberately failed to stop and struck Robertson's hand as he passed him. The parties' disagreement over who initiated the contact presents a genuine factual dispute because, under Robertson's version, the contact was merely accidental, while under Aguilar's version, the contact was intentional. But, on its face, this factual dispute also easily resolves the remaining legal question of whether Robertson's contact was objectively reasonable because neither party claims that Robertson struck Aguilar in order to bring him to a stop. Stated in other words, because it is undisputed under each party's version of the facts that Robertson's contact was neither intended nor necessary to bring Aguilar to a stop, the genuine factual dispute over whether Aguilar or Robertson initiated the contact is also material. Under Aguilar's version, Robertson's conduct was unconstitutional because he intentionally struck Aguilar when no force was necessary, while under Robertson's version, his conduct was constitutional because the contact was accidental. *Cf. Schmidt v. Gray*, 399 F. App'x 925, 928

(5th Cir. 2010) (affirming denial of summary judgment because officer's intentional slamming of patrol car trunk on plaintiff's finger, which officer claimed was inadvertent, was objectively unreasonable since "neither party contends that *any* use of force was necessary"). Thus, because this factual dispute is material, I find that the district court correctly denied summary judgment as to Robertson.

Furthermore, even if I were to ignore Robertson's own acknowledgment that his contact with Aguilar was not aimed at bringing Aguilar to a stop and, instead, look solely to Aguilar's facts, I nonetheless find that the district court's analysis is consistent with caselaw examining what level of force is objectively unreasonable. *See Bush*, 513 F.3d at 502 ("[T]he permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." (citing *Graham*, 490 U.S. at 396)). There is no doubt that a speeding violation is low on the severity scale. More importantly, the facts presented by Aguilar contradict both the majority's conclusion that Aguilar "posed a threat" and the majority's suggestion that "whether Aguilar was resisting arrest or attempting to flee is disputed." First, although Aguilar's failure to stop could have been viewed as a threat if Robertson reasonably believed Aguilar might have been attempting to hit him, the facts alleged by Aguilar indicate not only that he had nearly come to a complete stop and had slowed down to "one to three miles per hour," but also that Aguilar was trying to avoid hitting the deputies as Robertson stepped in front of him. It seems to me that if Robertson reasonably believed that Aguilar might pose a threat by attempting to deliberately hit him, he would not have stepped in front of the vehicle in the first place. In fact, Robertson, himself, appears to acknowledge that he did not believe Aguilar was deliberately attempting to hit him, as he stated in his offense report that he had "observed the motorcycle's front end dive

as the driver started braking hard" and "realized the motorcycle was not stopping fast enough." R. 56. Thus, the only "threat" posed by Aguilar was one that Robertson created himself by stepping in front of Aguilar as he struggled to come to a complete stop.

Second, I find it difficult under Aguilar's version of the facts to conclude that a reasonable officer could have believed that Aguilar was either resisting arrest or attempting to flee. Not only does Aguilar expressly assert that "[a]t no point in time was [he] attempting to flee the officers or resist arrest," Pl.'s Resp., Att. 1 at 1, but, assuming, as we must, that Aguilar "hit the brakes" and nearly came to a complete stop before reaching the deputies, I do not see how a reasonable officer could have doubted that Aguilar was attempting to comply with the order to stop. Indeed, Robertson admits, as noted above, that Aguilar was "braking hard" before he reached the deputies. R. 56.

In addition, the cases cited by the majority to illustrate examples of reasonable force are distinguishable from this case in that they involve arrests in which the officer caused no physical harm, *Greene v. Knight*, 564 F. Supp. 2d 604 (N.D. Tex. 2008), the plaintiff resisted arrest, *Davis v. Rodriguez*, 364 F.3d 424 (2d Cir. 2004), or force was necessary to cause the arrest, *Kellough v. Bertrand*, 22 F. Supp. 2d 602 (S.D. Tex. 1998). As discussed above, none of these three situations arise from the facts alleged by Aguilar. Instead, the case before us is more closely aligned with cases in which an officer's use of force was excessive because 1) the force was employed in the context of a minor traffic violation and 2) the level of force was unnecessary under the circumstances to effectuate the arrest. *See Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); *see also Newman v. Guedry*, 2012 WL 6634975, at *4 (5th Cir. Dec. 21, 2012) (holding that use of taser and nightstick to compel compliance during traffic stop was objectively unreasonable); *Levins v. Smith*, 285 F. App'x. 197, 198 (5th Cir. 2008) (finding

No. 11-51069

use of pepper spray and other physical force in reaction to plaintiff exiting vehicle during traffic stop to be objectively unreasonable).

Furthermore, even if the facts of cases like *Deville* and *Bush* are marginally distinguishable from the facts described by Aguilar,[2] such distinctions do not place this case into any of the categories represented by *Greene*, *Davis*, or *Kellough*. Indeed, Aguilar's facts arguably provide *more* evidence of excessive force than the facts in *Deville* and *Bush* insofar as the plaintiffs in those cases resisted arrest, at least initially, and the officers' reasonableness hinged on whether the degree of force used to effectuate the arrests was appropriate. Similarly, in *Newman v. Guedry*, the court held that the use of a taser and nightstick to compel compliance during a traffic stop constituted an objectively unreasonable degree of force because the officers failed "to use physical skill, negotiation, or even commands" before applying such force. 2012 WL 6634975, at *4. In comparison, and as explained above, the facts alleged by Aguilar indicate that *no* force was needed to stop him, as a reasonable officer would have observed that Aguilar was attempting to come to a complete stop and had nearly done so before reaching the deputies. Thus, in contrast to *Deville*, *Bush*, and *Newman*, we need not reach the question of whether the *degree* of force used by Robertson was reasonable because Aguilar's facts, bolstered by Robertson's own admissions, show that *no* force was necessary to effectuate the stop.

---

[2] The majority suggests, for example, that *Deville* and *Bush* are distinguishable because they "involved fairly significant acts of force," which, respectively, included hitting a plaintiff's face into a car and throwing a plaintiff up against a car. Accepting Aguilar's version of events as true, however, I find Robertson's allegedly intentional blow to Aguilar, which was made with enough force to break Aguilar's clavicle bone, to be comparable to the force in *Deville* and *Bush*. The majority also points out that the plaintiffs in *Deville* and *Bush* had no opportunity to flee, but, as noted above, I find that no reasonable officer would have perceived Aguilar as posing a flight risk.

No. 11-51069

As emphasized by the district court, under Robertson's version of the facts, there is little doubt that his allegedly accidental contact with Aguilar was objectively reasonable. Yet for this interlocutory appeal, where we review only the materiality of the underlying factual disputes and thus accept the plaintiff's facts as true, we are compelled to credit Aguilar's version of the facts—facts which, in my view, demonstrate that Robertson's conduct was objectively unreasonable under clearly established law. Accordingly, because I find that the district court did not err in concluding that there is a material factual dispute over whether Robertson used objectively reasonable force in striking Aguilar, I would affirm the district court's denial of summary judgment as to Robertson,[3] thus allowing this case's genuine factual disputes to be resolved by a jury.[4]

---

[3] Alternatively, to the extent that Robertson contests the genuineness of the factual disputes in this case, the appeal should be dismissed because, having determined, as a matter of law, that the factual disputes in this case are material, this court has no jurisdiction to review the district court's determination that the disputes are genuine. *See, e.g., Newman*, 2012 WL 6634975, at *6; *Oporto v. Moreno*, 445 F. App'x. 763, 766 (5th Cir. 2011); *Gragert v. Waybright*, 423 F. App'x. 428, 431 (5th Cir. 2011); *Linbrugger v. Abercia*, 363 F.3d 537, 544 (5th Cir. 2004).

[4] As indicated throughout my dissent, the relevant question in this case is whether, under Aguilar's version of the facts, any force was necessary to bring him to a stop. It is worth repeating that I believe no force was necessary under Aguilar's facts, which state that Aguilar was attempting to and had nearly come to a complete stop at the time force was used. The majority, in making its objective reasonableness determination, appears to *assume* that some force was needed, and then asks whether the degree of force used was reasonable. It is the majority's omission of the crucial threshold question of whether *any* force was needed to effectuate the stop, not the majority's correct statement that some degree of force may be used when necessary to effectuate an arrest or stop, which provides the basis for my dissent.

18