KING, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s decision to affirm the district court’s denial of qualified immunity to Chadrin Mullenix. The majority’s decision conflicts, in several respects, with Supreme Court precedent and our court’s recent decision in Thompson v. Mercer, No. 13-10773, 2014 WL 3882460, 762 F.3d 433 (5th Cir.2014). While it is a jury’s responsibility to resolve material fact disputes, because no such fact dispute is present here, it is our responsibility as judges to decide whether Mullenix acted objectively unreasonably under the Fourth Amendment. Based on my review of the record, I conclude that Mullenix’s use of force was not objectively unreasonable because the threat Israel Leija, Jr. posed to nearby officers, viewed in light of his culpability for that threat, was sufficiently grave to justify the use of a gun to shoot at Leija’s vehicle.
The majority opinion is replete with the uncontradicted facts. It nevertheless purports to identify a single factual dispute precluding summary judgment, explaining: “whether Leija was posing a substantial and immediate risk of danger to other officers or bystanders, sufficient to justify the use of deadly force at the time of the shooting, is a disputed fact, and we must draw all inferences in favor of the plaintiff.” But the “fact issue” referenced by *545 the majority — and referred to a jury — is simply a restatement of the objective reasonableness test that applies to Fourth Amendment excessive force claims. As the Supreme Court and our circuit have held, the application of that test is a legal question to be decided by a judge.
In Scott v. Harris, decided in 2007, the Supreme Court explained, “[a]t the summary judgment stage ... once we have determined the relevant set of facts and drawn all inferences in favor of the non-moving party to the extent supportable by the record, the reasonableness of [an offi-cerj’s actions ... is a pure question of law.” 550 U.S. 372, 381 n. 8, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (internal citations and emphasis omitted). In clarifying this point, the Court was responding to Justice Stevens’s argument, in dissent, that “[wjhether a person’s actions have risen to a level warranting deadly force is a question of fact best reserved for a jury.” Id. at 395, 127 S.Ct. 1769 (Stevens, J., dissenting).
This approach accords with our circuit’s longstanding view that, under the Fourth Amendment, the determination of the reasonableness of a seizure is a conclusion of law. See, e.g., Jimenez v. Wood Cnty., 621 F.3d 372, 376 (5th Cir.2010), aff'd en banc, 660 F.3d 841 (5th Cir.2011); see also White v. Balderama, 153 F.3d 237, 241 (5th Cir.1998) (“While it is true that the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application and that proper application of the Fourth Amendment objective reasonableness test requires careful attention to the facts and circumstances of each case, the ultimate determination of Fourth Amendment objective reasonableness is a question of law.” (internal quotation marks, citations, and brackets omitted)). More recently, in Thompson, we cited Scott and rejected the plaintiffs’ contention in that case that the question of reasonableness must be submitted to a jury. 762 F.3d at 441, 2014 WL 3882460, at *7 (citing Scott, 550 U.S. at 381 n. 8, 127 S.Ct. 1769).
In spite of Scott and our circuit’s precedent, the majority — without actually identifying any disputed facts — repeatedly suggests that fact disputes remain. The majority’s conclusion that summary judgment is inappropriate appears to be based on its belief that jurors could draw different “inferences,” albeit based on the undisputed summary judgment evidence, about the reasonableness of Mullenix’s actions. But the majority confuses factual inferences, which are for a jury to make, with legal conclusions, which are committed to a judge. See Crowell v. Shell Oil Co., 541 F.3d 295, 309 (5th Cir.2008) (“A court is not required to draw legal inferences in the non-movant’s favor on summary judgment review.”). The majority points to a number of undisputed facts, such as the absence of heavy traffic near Leija, that might weigh against a conclusion that the risk Leija posed justified the level of force used by Mullenix. That the question whether Mullenix’s actions in this case were objectively reasonable is, in the majority’s wording, “debatable,” however, does not transform what otherwise would be a legal question into a factual question precluding summary judgment. Cf. Gould v. Davis, 165 F.3d 265, 269 (4th Cir.1998) (“While the district court is correct that different facts in evidence could be used to support different conclusions as to whether the officers deserve qualified immunity, this does not indicate a factual dispute, but rather, a question of law. The district court’s order does not point to disputed questions of fact, but rather, disputed legal inferences that could be drawn from what is an undisputed factual record.”).
*546 The majority further cites to several decisions in support of its argument that this case should be sent to a jury. In these decisions, however, the courts identified concrete factual disputes precluding summary judgment. See Tolan v. Cotton, — U.S.—,—, 184 S.Ct. 1861, 1868, 188 L.Ed.2d 895 (2014) (holding that there were fact disputes “with regard to the lighting, [the plaintiffs] mother’s demean- or, whether he shouted words that were an overt threat, and his positioning during the shooting”); Vaughan v. Cox, 343 F.3d 1323, 1330 (11th Cir.2003) (holding that there were factual disputes as to whether the suspect intentionally rammed a police vehicle and whether the suspect made aggressive moves immediately before the officer fired); see also Scott, 550 U.S. at 380, 127 S.Ct. 1769 (explaining that whether the driver “was driving in such fashion as to endanger human life” was a “factual issue,” but that there was no genuine factual dispute in that case (emphasis added)); Lytle v. Bexar Cnty., 560 F.3d 404, 412-13 (5th Cir.2009) (concluding that the direction and distance that the suspect’s car was traveling at the moment the officer fired were disputed). No such disputed facts are present here. Accordingly, regardless of whether Mullenix’s use of force was reasonable, as I believe, or excessive, this case is ripe to be decided in this appeal.
Given this, I turn next to the primary question presented here: whether, resolving any genuine fact issues[1] and drawing all factual inferences in the plaintiffs’ favor, Mullenix’s use of force against Leija was objectively unreasonable, as a matter of law, under the Fourth Amendment. “Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,” and “protects all but the plainly incompetent or those who knowingly violate the law.” Ashcroft v. al-Kidd, — U.S.—,—, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (internal quotation marks and citation omitted). The Supreme Court has explained that, in applying Fourth Amendment standards, “[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether the force used was reasonable is determined “from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Id. at 396, 109 S.Ct. 1865. In “weighing the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger probability of injuring or killing” a suspect, a court must “take into account not only the number of lives at risk, but also their relative culpability.” Scott, 550 U.S. at 384, 127 S.Ct. 1769.
Applying these legal standards, and considering the facts as a whole, Mullenix’s *547 decision to fire at Leija’s vehicle was not objectively unreasonable under the Fourth Amendment. As this court recognized in Thompson, a fleeing suspect’s possession of a firearm presents an independent and grave risk to officers and civilians that may, under certain circumstances, justify firing at the suspect’s vehicle, even when doing so poses a significant risk to the suspect’s life. The plaintiffs in Thompson argued that the officer’s actions were unreasonable because, at the time that the officer fired, the suspect “was driving on a ‘lonely’ rural road and his vehicle had already been disabled” by the shots that struck its radiator. 762 F.3d at 439, 2014 WL 3882460, at *4. According to the plaintiffs, this showed that the “threat to the officers had already passed.” Id. at 439, 2014 WL 3882460, at *5. We rejected this argument in no uncertain terms, noting that it “presumes that [the suspect] was only a threat to the extent that the truck was operational,” when, in fact, it was “undisputed that [the suspect] was in possession of a stolen firearm and that [the officer] was aware of that fact.” Id. While we “assume[d] for the purposes of summary judgment that [the suspect] did not” actually intend to use the gun, we concluded that “[the officer] was justified in assuming that there was an ongoing ‘threat of serious harm to the officer or others,’ even if [the suspect]’s vehicle was already disabled.” Id. (quoting Carnaby v. City of Houston, 636 F.3d 183, 188 (5th Cir.2011)).
Our analysis in Thompson compels a similar holding in this case. If anything, the objective threat that Leija would fire at officers or the public was more serious than the threat posed by the suspect in Thompson. In Thompson, although there was a firearm in the suspect’s vehicle, he never threatened to use it. Id. at 439, 2014 WL 3882460, at *5. Here, however, Leija twice called the Tulia Police Dispatch on his cell phone, during the pursuit, stating that he had a gun and that he would use it to shoot any law enforcement officers he saw. This information was conveyed to the officers involved in the pursuit, including Mullenix. Mullenix was also aware that there were several officers setting up tire spikes at various locations along the interstate, and that there was a police vehicle, with its lights on, parked underneath the bridge from which he was planning to fire. Moreover, Leija was highly culpable for the risks he posed, a factor that Scott instructs us to consider. 550 U.S. at 384, 127 S.Ct. 1769. Thus, even if the risk of serious injury Mullenix posed to Leija by shooting at his vehicle exceeded the risk of serious injury Leija posed to the officers in this case, Mulle-nix’s actions would not have been unreasonable under the Fourth Amendment.
The majority attempts to distinguish Thompson, in part, by pointing to the threat, in that case, posed by the suspect’s vehicle during the chase. But that argument is a non sequitur. In concluding, in Thompson, that the risk posed by the suspect’s possession of a firearm justified the officer’s decision to fire at it, we assumed that the vehicle was no longer operational. Id. at 439, 2014 WL 3882460, at *5. The majority also points out that the suspect in Thompson was suicidal, had stolen a car, and had abducted a woman during the flight (who was released before he was shot). While these facts were, no doubt, relevant to our analysis of the risks in Thompson, it would be strange to conclude that the objective risk that Leija would use a gun was not equally great, given that Leija alone specifically indicated his intent to shoot at officers.
The majority further minimizes the risk that Leija posed to Ducheneaux and the other officers positioned along the road by citing several decisions in which a suspect *548 was on foot or in a stopped vehicle.[2] See, e.g., Ballard v. Burton, 444 F.3d 391, 402-03 (5th Cir.2006). In those cases, it was possible for the officers to observe the suspect’s weapon, hands, or both, permitting the officers to react quickly before the suspect could use a weapon. Id. Here, however, Leija was traveling at high speeds and under cover of night, and Mul-lenix and the other officers could not see into Leija’s vehicle. The officers would not have been able to wait to shoot until after Leija raised his gun (which would not have been visible), without jeopardizing their own lives. See Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir.2008) (“A reasonable officer need not await the ‘glint of steel’ before taking self-protective action; by then, it is often ... too late to take safety precautions.” (internal quotation marks and citation omitted)). Equally troubling is the majority’s suggestion that, despite Leija’s two statements to police dispatchers that he possessed a gun, a reasonable officer could not have concluded that he had a firearm because Leija was “not fleeing the scene of a violent crime” and “no weapon was ever seen.” The majority’s suggestion eviscerates the Supreme Court’s requirement that we adopt the perspective of a reasonable officer on the scene and refrain from viewing the facts with “the 20/20 vision of hindsight.” Graham, 490 U.S. at 396, 109 S.Ct. 1865.
Additionally, while officers should use “non-lethal alternatives” to deadly force, when available, Mullenix reasonably believed that deploying tire spikes along the highway posed a significant risk of harm to officers, including Ducheneaux. Although the officers were trained to protect themselves, to the extent possible, when deploying and operating spikes, such protection was necessarily limited by the officers’ need to position themselves near the roadway and to maintain visual contact with oncoming traffic, so that they could use a rope attached to the spikes to pull them in front of the approaching suspect vehicle and then out of the way of approaching police (here, Rodriguez) and other vehicles. There is no evidence suggesting that the officers deploying road spikes could position themselves in a manner that would eliminate their exposure to gunfire from passing vehicles.
The majority notes that, in Thompson, the officers tried several alternative methods to stop the chase before the officer shot and killed the suspect. 762 F.3d at 438-39, 440-41, 2014 WL 3882460, at *4, *6. Yet one of these “non-lethal methods,” as the majority refers to them, involved an officer firing a shotgun at the suspect’s truck tires while that vehicle was in motion. Id. at 440-41, 2014 WL 3882460, at *6. It is hard to see how firing at a moving vehicle’s tires is any less lethal than shooting at its engine block, given that both pose a substantial risk that the driver will *549 be unintentionally struck by a bullet. Moreover, the fact that tire spikes twice failed to stop the suspect’s truck in Thompson only adds to the evidence presented in this case that tire spikes are often ineffective. The Fourth Amendment does not require that an officer have chosen what, in hindsight, appears to be the best course of action — only that the officer’s judgments be reasonable in light of the uncertainties inherent in police work. See Graham, 490 U.S. at 397, 109 S.Ct. 1865. Here, an objectively reasonable officer could have concluded, under the circumstances, that the risks posed to officers when deploying tire spikes outweighed their potential benefits.
I further question the majority’s implication that Mullenix lacked sufficient knowledge to determine whether Duche-neaux was at risk. Mullenix knew that there was an officer below the bridge that he was standing on, that the officer’s patrol lights were flashing (alerting Leija to the officer’s presence), that the officer was likely operating tire spikes, and that officers operating spikes are often vulnerable to gunfire from passing vehicles. Mulle-nix also knew that tire spikes are not always effective in stopping vehicles and that there were additional officers located just minutes away along the highway. The risks at stake here were at least as particularized as in the Supreme Court’s decisions in Scott and Brosseau and our decision in Thompson, where the officers employing force were not aware of the precise location or identity of the other officers and civilians they were acting to protect. See Scott, 550 U.S. at 384, 127 S.Ct. 1769 (“[Rjespondent posed an actual and imminent threat to the lives of any pedestrians who might have been present.” (emphasis added)); Brosseau v. Haugen, 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (granting qualified immunity to an officer who fired at a driver who had not yet driven his car in a dangerous manner to prevent possible harm to “other officers on foot who [she] believed were in the immediate area ... [and] any other citizens who might be in the area.” (internal quotation marks and citation omitted)); Thompson, 762 F.3d at 439, 2014 WL 3882460, at *5 (holding that it was sufficient for the officer to reasonably believe there “might be other travelers on the road,” even though the officer was not “aware of their presence”); see also Pasco ex rel. Pasco v. Knoblauch, 566 F.3d 572, 581 (5th Cir.2009) (recognizing that “the holding of Scott was not dependent on the actual existence of bystanders — rather, the Court was also concerned about the safety of those who could have been harmed if the chase continued”).
The majority also suggests that the harm Leija posed to the officers may have been insufficiently “immediate” to justify Mullenix’s use of force. Yet it is difficult to conceive of a threat that is more immediate than the one Leija posed. At the moment Mullenix fired, Leija was seconds away from crossing the path of one of the officers he had threatened to shoot and minutes away from passing several other officers. Cf. Thompson, 762 F.3d at 440, 2014 WL 3882460, at *6 (noting that, at the time point the officer fired at the suspect driver, the next town the driver would reach was “approximately a mile away”).
Finally, the majority implies that because Mullenix’s original intent was to strike the engine block of Leija’s vehicle, the lack of evidence that shooting at an engine block is an effective method for disabling a car is somehow relevant. But “Fourth Amendment reasonableness is predominantly an objective inquiry” that “regulates conduct rather than thoughts.” Ashcroft, 131 S.Ct. at 2080 (internal quotation marks and citation omitted). As the *550 Supreme Court clarified in Scott, “in judging whether [an officer]’s actions were reasonable, we must consider the risk of bodily harm that [the officer’s actions posed to [the suspect].” 550 U.S. at 383, 127 S.Ct. 1769 (emphasis added); see also id. (explaining that the Fourth Amendment’s objective reasonableness test does not depend on whether particular actions fall within the definition of “deadly force”); Thompson, 762 F.3d at 438, 2014 WL 3882460, at *4 (“There is no doubt that firing the assault rifle directly into the truck created a significant — even certain— risk of critical injury to [the suspect]. Under these circumstances, however, the risk was outweighed by ‘the extreme danger to human life posed by1 reckless vehicular flight.” (emphasis added) (citation omitted)). Mullenix’s actions would not violate the Fourth Amendment as long as he reasonably believed that the risks posed by Leija, viewed in light of Leija’s culpability for those risks, exceeded the risk of harm to Leija from shots fired in the direction of his vehicle. See Scott, 550 U.S. at 383-84, 127 S.Ct. 1769.[3] In my view, Mullenix reasonably weighed these risks.
In conclusion, I recognize that this is a close case. Whether Mullenix is entitled to qualified immunity is debatable. Forced to decide, one or more of my colleagues in the majority might well conclude that Mullenix’s actions violated clearly established Fourth Amendment law. While that would not be my conclusion, it would nevertheless be a fair, responsible decision. What we cannot do, on this record, is decline to decide the '■ Fourth Amendment issue and, instead, effectively lateral that decision to a jury. The ultimate issue of objective reasonableness is purely legal, and there are no genuine and material factual disputes preventing us from deciding that issue in this appeal. For that reason, I dissent.

. As I see it, the sole disputed fact in this case is whether MuIIenix heard the message relayed from his superior, Sergeant Byrd, that he should "stand by” and “see if the spikes work first.” But this fact issue, though genuine, is not material. The uncontradicted testimony of Byrd and other officers was that, under department policy, it was the responsibility of the "officer on the scene” to make judgments about the use of force. Furthermore, Sergeant Byrd's opinion as to whether MuIIenix should delay shooting at Leija’s vehicle, at best, informs but does not decide whether Mullenix’s use of force was objectively unreasonable in light of the risks posed by and to Leija. See Scott, 550 U.S. at 375 n. 1, 127 S.Ct. 1769 (observing that "[i]t is irrelevant to our analysis whether [the officer] had permission to take the precise actions he took” when he bumped the fleeing suspect off the road).

. The majority also states that Mullenix "did not indicate that he perceived a threat to Ducheneaux from Leija” before firing at Lei-ja’s vehicle. Mullenix’s subjective perception of a threat, however, is not material to the objective reasonableness inquiry before us. See Ashcroft, 131 S.Ct. at 2080. Moreover, the majority is plainly incorrect on this point. The record reflects that Mullenix’s actions were motivated by his belief that Leija would fire his weapon. Mullenix informed another officer over police radio that he was considering firing at Leija’s vehicle because "this guy has a weapon and is willing to shoot.” The majority asserts that "there is no evidence that any other officer from any of the law enforcement agencies involved in the pursuit ... decided to respond with deadly force.” The record shows, however, that Mullenix discussed his plan to shoot at Leija's vehicle with two other officers involved in the pursuit' — -Rodriguez and Shipman — neither of whom made any effort to dissuade him.

. It is worth noting that the probability of disabling Leija’s car may not be as low as the plaintiffs and the district court presume. In Thompson, although the suspect was travel-ling at high speeds, an officer positioned at the side of the road aimed at and successfully shot the radiator of the fleeing suspect's vehicle. 762 F.3d at 436, 2014 WL 3882460, at *2.